UNITED STATES of America, Plaintiff–Appellee,

v.

Joseph A. KIRSCHENBAUM, a/k/a Ari Kirschenbaum, Defendant–Appellant.

Appeal of: Julie KIRSCHENBAUM

Nos. 98–1591, 98–1592.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1998.

Decided Sept. 30, 1998.

Sheila Finnegan (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Gordon B. Nash, Jr. (argued), Deborah H. Bornstein, Gardner, Carton & Douglas, Chicago, IL, for Defendant–Appellant.

Before FLAUM, MANION, and DIANE P. WOOD, Circuit Judges.

MANION, Circuit Judge.

For those terminally ill, Medicare and Medicaid will pay for hospice care, which treats the patient with pain control and additional medical, social and spiritual assistance for the patient and the family. Defendant Joseph Ari Kirschenbaum owned or controlled a number of entities that delivered hospice services, and over several years he and his business operations received many millions of dollars. But the government has charged him with fraud and money laundering, and, pending trial, has seized about $20 million in assets. Mr. Kirschenbaum brings this interlocutory appeal challenging the district court's restraining order that seized the assets that the indictment against Mr. Kirschenbaum alleges are subject to forfeiture under 18 U.S.C. § 982(a)(1). Mr. Kirschenbaum first argues that none of the property is subject to pre-conviction seizure, then argues in the alternative that he was entitled to a hearing to challenge the government's proof and to show that he needed some of the seized assets to obtain counsel of his choice. As it relates to Mr. Kirschenbaum, we affirm the restraining order in all regards. Mr. Kirschenbaum's wife, Julie Kirschenbaum, also brings an interlocutory appeal challenging the district court's jurisdiction to enjoin her, a non-party. To the extent the order purports to enjoin her it is void, but to the extent Mrs. Kirschenbaum now attacks the part of the order directed to Mr. Kirschenbaum rather than to her, we affirm the denial of her motion.

## I. Background

We recite the facts as they have been alleged in the superseding indictment. As yet the allegations have not been tested by trial, so we express no opinion about their accuracy. In December 1991, Mr. Kirschenbaum incorporated Samaritan Care, Inc., an Illinois not-for-profit hospice, which he controlled. Samaritan Care provided hospice care to patients in nursing homes in Illinois and Indiana. Hospice care is provided to terminally ill patients. Rather than trying to cure the illness, which is diagnosed at that point as hopeless, hospice care focuses on controlling the pain and symptoms of the ailment, and delivers medical, social, psychological, emotional, and spiritual services to the patient and the patient's family. Medicare pays for hospice care for eligible patients, who generally are over age 65 and have been certified by a physician as being

terminally ill with less than six months to live. The Medicaid program in Illinois also pays for hospice care. Between September 1992 and December 1994, Samaritan Care received at least $11.5 million from Medicare and Medicaid as reimbursement for hospice care. Of this amount, Mr. Kirschenbaum paid himself at least $8.6 million for management and billing services. These payments were usually made to two corporations that Mr. Kirschenbaum controlled and were then passed to two limited partnerships that Mr. Kirschenbaum also controlled.

According to the superseding indictment, Mr. Kirschenbaum perpetrated a massive fraud scheme against Medicare and Medicaid by fraudulently obtaining state operating licenses, receiving payments for care to ineligible patients (many of whom were not even terminally ill), grossly overstating the number of patients cared for, and billing for patients who had already exhausted all hospice benefits. In December 1994, Mr. Kirschenbaum sold Samaritan Care to Integrated Health Services, a Maryland company in the business of managing nursing homes. He supposedly made numerous misrepresentations and so defrauded Integrated Health Services out of about $17 million. (The parties informed us that Integrated Health Services has brought a civil fraud action against Mr. Kirschenbaum.) Mr. Kirschenbaum is also charged with defrauding Illinois out of unemployment benefits that he collected and taxes he avoided paying.

## II. Proceedings In the District Court

On July 22, 1997, prior to Mr. Kirschenbaum being indicted, the government sought an ex parte restraining order covering some of Mr. Kirschenbaum's property, which the government contended was forfeitable as being involved in money laundering. The district court, Chief Judge Aspen, entered an order restraining about $17.8 million in 15 brokerage accounts, as well as other property. Mr. Kirschenbaum moved to dissolve the order, and the government moved to extend the restraining order for 90 days. On August 13, 1994, the parties conducted an evidentiary hearing before Magistrate Judge Lefkow, who subsequently recommended

that Mr. Kirschenbaum's motion to dissolve the order be denied and the government's motion to extend the order be granted. On September 25, 1997, Chief Judge Aspen overruled Mr. Kirschenbaum's objections to the recommendation.

On October 14, 1997, a federal grand jury returned a 73–count indictment against Mr. Kirschenbaum, charging him with mail fraud, wire fraud, health care fraud, and money laundering. It also sought forfeiture of $28,250,000 in various accounts and other property. The government requested and received an ex parte restraining order covering all the property identified in the indictment. Mr. Kirschenbaum again filed a motion to vacate this restraining order, arguing that he was entitled to an evidentiary hearing and that the government had the burden of proving that there was probable cause to believe the property covered by the restraining order was forfeitable. Mr. Kirschenbaum also argued that he needed to free some of the frozen assets to obtain counsel of his choice. The district court, Judge Gettleman, directed Mr. Kirschenbaum to make a showing that he had no other funds to obtain legal counsel and directed the government to make its evidence supporting the indictment available to Mr. Kirschenbaum. This precipitated numerous filings by both parties and several conferences that we need not recount. We do note, however, that the government produced large numbers of records and provided over 100 summary charts that it had created from those records.

On February 10, 1998, a grand jury handed down a 97–count superseding indictment against Mr. Kirschenbaum, which again charged Mr. Kirschenbaum with various fraud offenses and with eighty-six counts of money laundering in violation of 18 U.S.C. § 1957. The superseding indictment sought forfeiture of about $31 million in various accounts as well as other property. On February 27, 1998, the district court issued an order continuing the restraint of the previously frozen assets as well as some additional ones. The frozen accounts contained just under $20 million. On March 5, 1998, Mr. Kirschenbaum's counsel filed a motion on behalf of his wife Julie Kirschenbaum argu-

ing for a modification of the restraining order as it applied to the income stream from an Illinois nursing home that Mr. Kirschenbaum had put into her name. The district court denied that motion. Both Kirschenbaums filed notices of appeal, and the district court stayed all proceedings pending our decisions.

### III. Analysis

*A. Jurisdiction over Mr. Kirschenbaum's interlocutory appeal.*

■ Before turning to the merits of Mr. Kirschenbaum's interlocutory appeal, we must first address whether we have jurisdiction; although the parties assume we do, we have the obligation to satisfy ourselves that we can hear this appeal. *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir.1995). Mr. Kirschenbaum asserts we have jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) because the district court's order is an injunction and so the district court's denial of Mr. Kirschenbaum's motion to vacate that order is immediately appealable. *See* 28 U.S.C. § 1292(a)(1) (includes orders "refusing to dissolve or modify injunctions"); *In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir.1992). This court has yet to address the appealability of protective orders under § 982(b), but the Fifth and Ninth Circuits have and concluded they are appealable. *United States v. Floyd*, 992 F.2d 498, 500 (5th Cir.1993) (post-indictment pretrial ex parte protective order under 18 U.S.C. § 982(b)(1) (seizure of property) is "injunction" covered by 28 U.S.C. § 1292(a)(1)); *United States v. Ripinsky*, 20 F.3d 359, 361 (9th Cir.1994) (same) (citing *United States v. Roth*, 912 F.2d 1131, 1132 (9th Cir.1990)) (restraining order under 21 U.S.C. § 853(e)(1)); *see also United States v. Field*, 62 F.3d 246, 248 (8th Cir.1995) (reviewing postindictment ex parte restraining order under 18 U.S.C. § 982(b)(1) without discussing basis for appellate jurisdiction). And courts have reached the same conclusion regarding restraining orders under 21 U.S.C. § 853(e)(1), which 18 U.S.C. § 982(b)(1) incorporates. *Roth*, 912 F.2d at 1132 (post-indictment ex parte restraining order under 21 U.S.C. § 853(e)(1) appealable under § 1292(a)(1)); *United States v. Monsanto*, 836 F.2d 74, 77 (2d Cir.1987) (same), *vacated on rehearing en banc on other grounds*, 852 F.2d 1400 (2d Cir.1988) *(per curiam), and rev'd on other grounds*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (reviewing merits without addressing jurisdictional basis); *cf. United States v. Estevez*, 852 F.2d 239, 240 n. 3 (7th Cir.1988) (dismissing interlocutory appeal of restraining order under § 853(e)(1) as moot where defendant had already been convicted and had filed appeal from final judgment). On the other hand, the Tenth Circuit concluded that restraining orders under 21 U.S.C. § 853(e)(1) and a comparable provision under RICO, 18 U.S.C. § 1963(e)(1), were appealable under the collateral order doctrine. *United States v. Musson*, 802 F.2d 384, 385 (10th Cir.1986); *but see In re Assets of Martin*, 1 F.3d 1351, 1355 (3d Cir.1993) (concluding restraining order under § 18 U.S.C. § 1963(e)(1) was appealable under 28 U.S.C. § 1292(a)(1) as an "injunction") (citing *Floyd*, 992 F.2d at 500). We agree with the *Martin* court that the "considerable weight" of decisions on point establishes that the restraining order in this case and the district court's order refusing to vacate it are immediately appealable under 28 U.S.C. § 1292(a)(1).

*B. Whether the property identified in the indictment is subject to pre-conviction seizure.*

■ Mr. Kirschenbaum argues that his property identified in the indictment as subject to postconviction forfeiture is not subject to preconviction seizure because, although the indictment alleges the property was involved in money laundering, it does not also allege that the property was involved in federal drug crimes. The parties have not identified any case addressing the issue of whether the pre-trial restraint provision of § 853(e)(1)(A) incorporated by 18 U.S.C. § 982(b)(1) applies to charges not involving drugs, and our own research has revealed none. Because this issue involves a question of statutory interpretation, our review is *de novo*. *United States v. Wicks*, 132 F.3d 383, 386 (7th Cir.1997).

The indictment alleges that the identified property was "involved" in money laundering

or "traceable" to such property. If these allegations are proven at trial, this property must be forfeited under 18 U.S.C. § 982(a)(1), which provides that as part of the sentence for any person convicted of certain federal offenses, including money laundering under 18 U.S.C. § 1957, the district court must "order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." *See also United States v. Bajakajian*, — U.S. ——, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (addressing post-conviction forfeiture under § 982(a)(1) for violation of 31 U.S.C. § 5316, one of the enumerated offenses). The government asserts that under 18 U.S.C. § 982(b)(1)(A) it may obtain a pre-conviction restraining order over property alleged in an indictment to be forfeitable under § 982(a)(1) without regard to whether it was involved in federal drug offenses.

Section 982(b)(1) provides that "[p]roperty subject to forfeiture under this section [and] *any seizure ... thereof ...* shall be governed—(A) in the case of forfeiture under subsection (a)(1) ..., by subsections (c) and (e) through (p) of [21 U.S.C. § 853]." [1] (Emphasis supplied.) The incorporated § 853 is part of the Comprehensive Drug Abuse Prevention and Control Act of 1970 as amended, which by its terms applies only to forfeiture of property relating to federal drug offenses under 21 U.S.C. §§ 801–966. The critical provision for our analysis is 21 U.S.C. § 853(e). That section provides:

> (1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—
>
> > (A) upon filing an indictment or information charging a violation of [the Federal drug laws set out in 21 U.S.C. §§ 801–966] for which criminal forfeiture may be ordered under this section and alleging that the property with respect

to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

> > (B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—
> >
> > > (i) there is substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and
> > >
> > > (ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is entered;

*Provided however;* That an order entered pursuant to subparagraph (B) shall be effective for not more than 90 days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

Mr. Kirschenbaum argues that because the language of § 853(e)(1)(A) & (B) specifically refers to seizing property to be forfeited under § 853, which only deals with property of those convicted of drug crimes, it cannot cover seizure of property subject to forfeiture under § 982(a)(1), which covers various offenses including money laundering but does not cover drug offenses. Mr. Kirschenbaum asserts that because the language of § 853(e) is plain, our inquiry is at an end. *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992) ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished."). This would be correct if § 853(e) were the only statutory provision at issue, but it is not. The real issue here is what 18 U.S.C.

---

**1.** After this case was argued, 18 U.S.C. § 982 was amended by the Telemarketing Fraud Prevention Act of 1998, Pub.L. 105–184 (June 23, 1998), but none of the amendments affect our analysis of this case. Throughout this opinion we will refer to the statute as amended.

§ 982(b)(1) means when it states that seizure of property forfeitable under § 982(a)(1) "shall be governed ... by" 21 U.S.C. § 853(e). Under Mr. Kirschenbaum's interpretation of this provision, § 853(e)'s exact language, including that referring to federal drug law violations, is incorporated into § 982(b)(1)(A) without change. Thus § 853(e)'s limitation to drug-related property forfeitable under § 853(a) is incorporated as well. While this interpretation of "shall be governed ... by" is not plainly precluded by that language, it is not plainly mandated either. Thus the "plain language" doesn't tilt the scale either way. After examining the language of § 982 and § 853 in context, and comparing other statutory provisions that use the term "shall be governed by," we conclude that property other than that related to proceeds of drug violations can also be seized pre-trial.

As Mr. Kirschenbaum would have it, property forfeitable under § 982(a)(1) would be subject to seizure under § 982(b)(1)(A) only if the property was also forfeitable under § 853(a). One could then ask what good is § 982, but this interpretation would not lead to the difficulty of one statute rendering another statute a nullity, see *Liteky v. United States*, 510 U.S. 540, 552–53, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (it is unreasonable to interpret one provision as eliminating another unless the language requires it); *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (rejecting interpretation of one section that renders another "a practical nullity and a theoretical absurdity"). He does not suggest that § 982 made § 853 of no effect; certainly property could be forfeitable under both 21 U.S.C. § 853(a) and 18 U.S.C. § 982(a)(1), at least post-conviction.

For example, applying Mr. Kirschenbaum's argument, if a person earned $1 million selling narcotics in violation of 21 U.S.C. § 841(a)(1), upon conviction the $1 million would be subject to forfeiture under 21 U.S.C. § 853(a)(1) as "proceeds the person obtained ... as a result of the violation." If the person also transferred the ill-gotten proceeds by a "monetary transaction" pro-

scribed by 18 U.S.C. § 1957, the person would be guilty of money laundering and, if convicted of that crime as well, the $1 million would also be subject to forfeiture under 18 U.S.C. § 982(a)(1) as being "involved" in or "traceable" to the money laundering. So under Mr. Kirschenbaum's interpretation of "shall be governed ... by," our hypothetical $1 million would be subject to pre-conviction seizure under § 982(b)(1), but only because it is also subject to pre-conviction seizure under § 853(e) had it not been incorporated into that section.

Thus, under Mr. Kirschenbaum's interpretation, § 982(b)(1)'s incorporation of § 853(e) accomplished nothing because only property subject to seizure absent the incorporation would be subject to seizure with it. Of course this does not necessarily preclude this interpretation being the one the legislature intended. At least one other statute seems to have used the term "shall be governed by" in the way Mr. Kirschenbaum suggests. The Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb to 2000bb–4, which the Supreme Court declared unconstitutional in *City of Boerne v. Flores*, —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), provided a judicial remedy for persons aggrieved under the Act and provided that standing to bring such a claim "shall be governed by the general rules of standing under article III of the Constitution." 42 U.S.C. § 2000bb–1. Of course, the article III standing rules apply to any statutorily created cause of action, whether they are specifically incorporated or not, see *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), so incorporating them by reference accomplished nothing. But the legislature may have intended the reference to article III standing to indicate standing under the statute shall be as broad as permitted under the constitution; that is, rather than trying to set out the standards from the controlling case law, the statute incorporated those standards by reference. Although it is now a moot question, we think this second possibility would be a permissible interpretation of "shall be governed by" in that statute. And it is just this sort of interpretation that we think is more plausible for 18 U.S.C. § 982(b)(1)'s use of that same term: rather

than setting out all the lengthy provisions of the incorporated subsections of 21 U.S.C. § 853, the statute incorporates those provisions by reference.

Many federal statutes use "shall be governed by" in exactly this way. For example, 2 U.S.C. § 688(c)(5) provides that, except as specifically noted in that statute, for impoundment legislation consideration of "any recission bill ... shall be governed by the Rules of the House of Representatives applicable to other bills and resolutions." Also, 35 U.S.C. § 135(d) permits parties to a patent interference proceeding to resolve their dispute by arbitration and provides that "[s]uch arbitration shall be governed by the provisions of Title 9," unless those provisions are inconsistent with other provisions of 35 U.S.C. § 135. And 42 U.S.C. § 1973*l* provides that criminal contempt of the enforcement of federal voting rights "shall be governed by" 42 U.S.C. § 1995, which covers criminal contempt of the enforcement of other civil rights statutes. Some federal drug enforcement provisions incorporate 21 U.S.C. 841(b)(1)(A)'s scheme of minimum sentences based on the amount of drugs by providing that the minimum sentence for violating the incorporating section "shall be governed by" § 841(a)(1)'s scheme. *See, e.g.,* 21 U.S.C. §§ 859, 860, 861.

In each of these instances, a reasonable interpretation of "shall be governed by" is "shall be governed by *the procedures*" of the incorporated provision even where the limiting language of the incorporated section would make them inapplicable to the incorporating section. And we think that such an interpretation is equally reasonable for 18 U.S.C. § 982(b)(1)'s incorporation of 21 U.S.C. § 853(e). Given the choice between Mr. Kirschenbaum's assertion, which would leave § 982(b)(1) with no purpose, and the interpretation that § 982(b)(1) like many other statutes accomplished the reasonable goal of adopting provisions set out at length elsewhere without restating them, we think the latter is the correct one. Our conclusion is buttressed by § 982's overall scheme, which incorporates differing combinations of subsections of § 853 for some 982(a) forfeitures but not for others: Section 982(b)(1)(A) incorporates thirteen subsections of § 853(e) for forfeitures under § 982(a)(1), (a)(6), and (a)(8); § 982(b)(1)(B) incorporates a slightly different combination of thirteen subsections of § 853 for forfeitures under § 982(a)(2); and § 982(a)(7)(B) incorporates a different combination of 15 subsections of § 853 for forfeitures under § 982(a)(7)(A). Thus, § 853 has not been incorporated at all for forfeitures under § 982(a)(3), (a)(4), or (a)(5). This scheme evidences careful consideration of which provisions should apply to some forfeitures but not others. If pre-trial seizures were not available, as Mr. Kirschenbaum insists, such congressional consideration would have been for nothing. *See Lorillard v. Pons,* 434 U.S. 575, 582, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("This selectivity that Congress exhibited in incorporating certain FLSA practices strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the remedies and procedures of the FLSA."). So we hold that § 982(b)(1)'s incorporation of the various subsections of § 853 incorporates those provisions' procedures but applies them only to the designated forfeitures under § 982(a) rather than to forfeitures under § 853(a).

*C. Whether Mr. Kirschenbaum was entitled to a hearing to challenge the indictment's factual support.*

■■■■ Mr. Kirschenbaum argues that even if his property is subject to pre-conviction seizure, under the Fifth Amendment's due process clause, he was entitled to a post-indictment hearing where the government bore the burden of proof and where he could show his need to use the restrained assets to obtain counsel of his choice. (He received a pre-indictment hearing, as required by 21 U.S.C. § 853(e)(1)(B), which is incorporated by 18 U.S.C. § 982(b)(1)(A)). The government responds that he was not entitled to a hearing, and even if he was, he got one. Mr. Kirschenbaum's argument on appeal conflates two separate Fifth Amendment issues: (1) whether he was entitled to a hearing on the deprivation of his liberty interest under the Sixth Amendment to obtain counsel of his choice; and (2) whether he was entitled to a hearing on the (temporary) deprivation of his

property without regard to his Sixth Amendment rights. As we explain below, although he makes a passing reference to the second issue, his arguments essentially address only the first. Because these issues require us to interpret the scope of Mr. Kirschenbaum's Fifth Amendment due process rights, our review is *de novo*. *See Wicks*, 132 F.3d at 386 (constitutional claims in general reviewed *de novo*).

Section 853(e)(1)(B) permits pre-indictment protective orders, but requires notice and an opportunity for a hearing by "persons appearing to have an interest in the property." It also requires that the court make findings similar to those for issuing a preliminary injunction. Section 853(e)(1)(A), however, contains no such procedural requirements for post-indictment protective orders. And in *United States v. Moya–Gomez*, 860 F.2d 706, 729 (7th Cir.1989), we concluded that this omission was telling: we held that § 853(e) prohibited a post-indictment hearing for the defendant to challenge the indictment's factual basis. We also held that restraining forfeitable funds without a hearing did not violate a defendant's Sixth Amendment right to counsel of his choice—which is more limited than the Sixth Amendment right to have some counsel. *Id.* at 730. A year later, the Supreme Court reached the same conclusions in two companion cases: *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2667, 105 L.Ed.2d 528 (1989). But in *Moya–Gomez*, we addressed a further issue that the Supreme Court did not: whether the Fifth Amendment's due process clause required an evidentiary hearing on the deprivation of the defendant's liberty interest in his Sixth Amendment right to counsel of choice. We held that due process prohibited restraining such funds without a hearing if the defendant could show a bona fide need to use the funds to obtain counsel. 860 F.2d at 730. The Supreme Court expressly left unresolved whether § 853(e)'s pre-conviction procedures comported with Fifth Amendment due process. *Monsanto*, 491 U.S. at 615 n. 10, 109 S.Ct. 2657.

Mr. Kirschenbaum argues primarily that he showed a bona fide need to use some of the restrained assets to obtain counsel and so was entitled to a hearing. We disagree. Mr. Kirschenbaum submitted a bare-bones affidavit asserting that he personally lacked sufficient funds to obtain counsel of his choice. At a status conference on December 22, 1997, the district court asked whether Mr. Kirschenbaum's wife or other members of his family would fund his defense. Mr. Kirschenbaum's counsel indicated that he had not inquired but that he would. Again on January 23, 1998, the district court expressed its desire for more complete information. Specifically, the court wanted to know if funds were available to provide Mr. Kirschenbaum counsel of his choice, be they his own funds or funds that his wife or some other relative was willing to provide him. And on February 20, 1998, the district court again inquired whether Mr. Kirschenbaum's counsel intended to put on this further evidence showing his inability to pay for counsel. The court expressed its continuing desire to know if Mrs. Kirschenbaum had assets of her own or assets that were Mr. Kirschenbaum's but had been put in her name that could pay for Mr. Kirschenbaum's defense. The court had raised the same question two months before but apparently counsel still had no answer. He stated, "I'll look into that," but if counsel did look into that, he never presented anything further to the court. On this record, Mr. Kirschenbaum simply failed to "show a bona fide need to utilize assets subject to the restraining order to conduct his defense," *Moya–Gomez*, 860 F.2d at 730, and thus failed to show his entitlement to a hearing under the rule of that case.

■ The more difficult issue is the one left open by the *Monsanto* Court: "whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed." 491 U.S. at 615 n. 10, 109 S.Ct. 2657. "The core of due process is the right to notice and a meaningful opportunity to be heard." *E.g.*, *LaChance v. Erickson*, —— U.S. ——, ——, 118 S.Ct. 753, 756, 139 L.Ed.2d 695 (1998). Although an indictment alleging that one's property is forfeitable is "notice" of the government's allegations,

*United States v. Sarbello,* 985 F.2d 716, 719–20 (3d Cir.1993), it does not provide a meaningful opportunity to be heard. *See, e.g., United States v. Ross,* 77 F.3d 1525, 1543 (7th Cir.1996) ("In a criminal case, the due process requirements of notice and a hearing are accomplished by the indictment and the trial."). The open question is whether the fact that the ultimate merits of the allegations will eventually be tested at a trial is a sufficiently meaningful opportunity to be heard to justify pre-conviction seizure.

In *United States v. Crozier,* 777 F.2d 1376, 1383–84 (9th Cir.1985), decided four years before *Monsanto,* the court held that 21 U.S.C. § 853's failure to provide a post-indictment hearing either for the defendant or for interested third-parties violated their due process rights to a meaningful hearing. The Ninth Circuit reaffirmed this holding after *Monsanto. Roth,* 912 F.2d at 1133. And the Second Circuit *en banc* addressed this issue when *Monsanto* was remanded to it. The Second Circuit held that a pre-conviction restraining order's "removal of assets from [the defendant's] control is, by nature, temporary and nonfinal. Such a removal is, nonetheless, a 'deprivation of property' subject to the constraints of due process." 924 F.2d 1186, 1192 (2d Cir.1991) (*en banc*). The full court unanimously concluded that because of exigent circumstances in the criminal forfeiture setting, a defendant was not entitled to a hearing *prior to* the entry of a post-indictment restraining order. *Id.* at 1193. Although divided on the issue, the court went on to hold that a defendant was entitled to a post-restraint hearing in which he could challenge the indictment's finding that there was probable cause to believe he committed the charged crimes and that there was probable cause to believe the named property was forfeitable. *Id.* at 1203. The Second Circuit relied for its holding on the Fifth and Sixth Amendment rights in combination, which could be seen as limited to a hearing where sufficiency of available attorney's fees are at issue, in line with our holding in *Moya-Gomez,* which the Second Circuit cited with approval. *Id.* at 1191. But the Second Circuit's due process analysis could also be seen to support the broader notion that without regard to the need to obtain counsel, a defen-dant is entitled to a hearing on the restraint of his property. Earlier, however, the Eleventh Circuit in *United States v. Bissell,* 866 F.2d 1343, 1353 (11th Cir.1989), held that due process was satisfied when the defendant was provided a trial eight months after his property was restrained. In the case before us over a year has passed since the property was first restrained.

Because Mr. Kirschenbaum has not adequately presented the issue on appeal, we will not decide this close question. Some parts of Mr. Kirschenbaum's Fifth Amendment argument seem to assert a general right to a hearing before being deprived of his property, but they are mixed in with his arguments asserting a right to a hearing on the denial of his liberty interest in obtaining counsel of choice. For example, his opening brief states that "[t]he *ex parte* restraining order effectively deprived Mr. Kirschenbaum of significant property. More importantly, though, the restraining order permanently deprives Mr. Kirschenbaum of a vital liberty interest by infringing on his Sixth Amendment right to counsel." Mr. Kirschenbaum never develops his deprivation of property argument, however, focusing instead on his liberty interest argument. Under similar circumstances, we have consistently held that such passing references to an argument did not adequately raise the issues. *E.g., United States v. Andreas,* 150 F.3d 766, 769–70 (7th Cir.1998) ("perfunctory and undeveloped arguments (even constitutional ones) are waived"). And Mr. Kirschenbaum seems not to have raised this issue in the district court either, although that would not preclude this court from addressing it. *Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, Benefits Review Board,* 957 F.2d 302, 304 (7th Cir.1992) ("[W]aiver, unless jurisdictional, is itself waivable."). But it would be imprudent to wrestle with whether the statute is unconstitutional—a difficult issue that has divided the circuits—without the benefit that a ruling by the district court and a full treatment by the parties on appeal would give us. We, too, will leave this question for another day.

### D. Mrs. Kirschenbaum's appeal.

■■■ Mrs. Kirschenbaum argued below and argues here that the district court's restraining order, which purports to enjoin her conduct, violates her due process rights because the district court has no personal jurisdiction over her, a nonparty. We must first decide whether Mrs. Kirschenbaum, who did not seek to intervene in the district court and is not a party, can even bring this appeal. Generally, non-parties lack standing to bring appeals. *See, e.g., B.H. v. Murphy*, 984 F.2d 196, 199 (7th Cir.1993). But non-parties who are bound by a court's equitable decrees have a right to move to have the order dissolved, *United States v. Board of School Commissioners of the City of Indianapolis*, 128 F.3d 507, 511 (7th Cir.1997), and other circuits have held that where a non-party is purportedly bound by an injunction, the non-party may bring an appeal rather than face the possibility of a contempt proceeding. *Hilao v. Estate of Marcos (In re Estate of Marcos Human Rights Litigation)*, 94 F.3d 539, 544 (9th Cir.1996); *In re Piper Funds, Inc.*, 71 F.3d 298, 301 (8th Cir.1995) ("A nonparty normally has standing to appeal when it is adversely affected by an injunction."). *But see Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir.1998) (overruling prior cases holding that class members who were not representatives may appeal from judgment without intervening). Because we have held that she had a right to move the district court to modify the restraining order, we conclude that Mrs. Kirschenbaum has standing to bring this appeal from the denial of her motion.

■■■ One could argue that the district court's restraining order essentially purports to enjoin the whole world: It provides that "Joseph Ari Kirschenbaum and any of his agents, servants, employees, attorneys (including Thomas Korman), *family members (including Julie Kirschenbaum)*, those persons in active concert or participation with him, *and third parties*, are prohibited and enjoined...." (Emphasis supplied). A district court may not enjoin non-parties who are neither acting in concert with the enjoined party nor are in the capacity of agents, employees, officers, etc. of the enjoined party. Fed.R.Civ.P. 65(d); *Regal*

*Knitwear Co. v. NLRB*, 324 U.S. 9, 12, 65 S.Ct. 478, 89 L.Ed. 661 (1945) (court may not grant "injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law"); *Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832 (2d Cir.1930) (L.Hand, J.) ("no court can make a decree which will bind any one but a party"); *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir.1995) (citing *Alemite*); *Herrlein v. Kanakis*, 526 F.2d 252, 253–54 (7th Cir.1975) (same). Of course this does not mean that non-parties are free to knowingly thwart injunctions. *Rockwell Graphic Systems, Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 919 (7th Cir.1996) (non-parties "may subject themselves to [the injunction]'s proscriptions should they aid or abet the named parties in a concerted attempt to subvert those proscriptions"); *Alemite*, 42 F.2d at 832 ("a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt"); *Regal Knitwear*, 324 U.S. at 14, 65 S.Ct. 478 ("In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."). But even a third-party aider and abettor must have her day in court. "[A] non-party with notice cannot be held in contempt until shown to be in concert or participation. It was error to enter the injunction against the [non-party], without having made this determination in a proceeding to which the [non-party] was a party." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

■■■ The government defends the district court's order by arguing that unlike normal injunctions, protective orders under § 853(e)(1), and thus § 982(b)(1) by incorporation, are binding on third-parties. As a matter of statutory interpretation, we cannot accept that argument. Section 853(e)(1) empowers the court to "enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of [forfeitable] property." The statute provides no special definition of "restraining order" or

"injunction," so we must assume those terms have their usual meanings. *Lorillard,* 434 U.S. at 583, 98 S.Ct. 866 (" '[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary.' ") (quoting *Standard Oil v. United States,* 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911)) (alteration by quoting Court). Moreover, the statute's reference to "any other action" cannot be read to authorize a court to act lawlessly. Even if Congress intended to abrogate due process by empowering a district court to enjoin parties over whom it had no jurisdiction, it could not.

In support of its argument, the government cites *United States v. Regan,* 858 F.2d 115, 119–20 (2d Cir.1988), in which the court held that a comparable seizure provision under RICO authorized courts to issue orders binding on nonparties. Because *Regan* involved a different statute, we need not decide today that we would not follow it. But to the extent the government proffers *Regan* as persuasive authority on this analogous statute, we find it unpersuasive. The *Regan* court reasoned that if courts were not free to issue orders binding on non-parties, "the statute's 'punitive purposes [would be] frustrated by allowing a defendant to transfer the illegal proceeds to a knowing third party.' " 858 F.2d at 120 (quoting *United States v. Long,* 654 F.2d 911, 916 (3d Cir.1981)) (alteration by quoting court). That, of course, is what the government suggests Mr. Kirschenbaum has done here. But the *Regan* court did not address the fundamental constitutional problems with interpreting the statute as it did. However convenient it might be for the government to violate the due process rights of some citizens in an effort to seize property that it contends is forfeitable, we see no way that it could do so.

■ Of course, § 853(e)(1)'s empowering the district court to "take any other action to preserve the availability of property" would certainly allow it to enter orders—restraining orders, injunctions, or otherwise—against persons other than the defendant, but in doing so the court must have jurisdiction

over those persons. The district court's attempt to enjoin Mrs. Kirschenbaum and other third-parties over whom the court had no personal jurisdiction is void and so binding on no one. *Herrlein,* 526 F.2d at 253; *cf. United States v. Indoor Cultivation Equipment,* 55 F.3d 1311, 1316 (7th Cir.1995) (addressing challenge under Fed.R.Civ.P. 60(b)(4)). Of course Mrs. Kirschenbaum—like any non-party—could be punished for contempt if, after a hearing and proper findings, it was shown that she aided Mr. Kirschenbaum to violate the injunction.

■ But on appeal Mrs. Kirschenbaum complains primarily about what the district court enjoined Mr. Kirschenbaum from doing, rather than what it enjoined her from doing. Specifically, the court commanded Mr. Kirschenbaum to place into escrow the income from the Wauconda Care Center that is due to Mrs. Kirschenbaum. (She is the nominal half-owner of the Care Center although Mr. Kirschenbaum allegedly purchased that half-interest with funds the government claims are traceable to the money laundering.) The district court's order found that Mrs. Kirschenbaum's putative half-interest in the Care Center was actually Mr. Kirschenbaum's and was potentially subject to forfeiture, and so enjoined him from dissipating the income from it. That aspect of the order presents no problems. But the finding that this half-interest was actually Mr. Kirschenbaum's does not bind Mrs. Kirschenbaum, and would not even if Mr. Kirschenbaum were convicted at trial. *See Zenith Radio,* 395 U.S. at 111, 89 S.Ct. 1562 (even the stipulation of one party that it was the alter ego of a non-party "cannot foreclose [the non-party], which has never had its day in court on the question"). Section 853 recognizes this and so provides for interested third-parties to assert their claims and have them adjudicated after a final order of forfeiture has been entered against the defendant. 21 U.S.C. § 853(n) (incorporated by 18 U.S.C. § 982(b)(1)(A)). Mrs. Kirschenbaum did not challenge the district court's conclusion that the half-interest in the Care Center was Mr. Kirschenbaum's rather than her own; indeed, under the statute she is prohibited from doing so prior to a final order of forfeiture. 21 U.S.C. § 853(k) (incorporated by 18 U.S.C. § 982(b)(1)(A)); *see United States v. Messino,* 122 F.3d 427, 428 (7th Cir.1997). The Ninth Circuit concluded that

this aspect of the statute was unconstitutional, *Crozier*, 777 F.2d at 1383–84, but Mrs. Kirschenbaum does not assert a due process right to challenge the district court's factual conclusions, so again we need not decide that constitutional question and we leave it for another day. We therefore have no basis for invalidating the part of the order that applies to Mr. Kirschenbaum.

In summary, the district court's attempt to enjoin Mrs. Kirschenbaum is void. But she does not challenge the district court's enjoining Mr. Kirschenbaum from disposing of his property nor does she challenge the district court's factual conclusion that his property included the half-interest in the Care Center. Thus, we must affirm the district court's denial of her motion to modify the order as it relates to Mr. Kirschenbaum.

## Conclusion

In Mr. Kirschenbaum's appeal, No. 98–1591, we AFFIRM the district court's restraining order as to him in its entirety. In Mrs. Kirschenbaum's appeal, No. 98–1592, the order's attempt to enjoin her is void and so we VACATE those parts of the order but we AFFIRM the denial of Mrs. Kirschenbaum's motion to the extent it sought to modify the order relating to Mr. Kirschenbaum.