LYONS, Justice.
On July 16, 2009, the Jefferson Circuit Court ordered the State Personnel Board (“the Board”), pending further order of that court, “not [to] issue any further subpoenas commanding the appearances of witnesses and/or the production of any documents in regard to any matters relating to any issues involved in” case no. CV-07-4052, litigation pending before the Jefferson Circuit Court. On July 29, 2009, the Board filed a petition for a writ of mandamus requesting this Court to set aside the trial court’s July 16, 2009, order; the petition was assigned case no. 1081436, and this Court ordered an answer and briefs. Also on July 29, 2009, the Board filed a notice of appeal from the trial court’s July 16, 2009, order; that appeal has been assigned case no. 1081462.

Factual Background and, Procedural History

Ruth A. Gwin and Sandra H. Turner are State employees who participated in a deferred-compensation plan (“the plan”) governed by § 36-26-14 and § 36-27C-1 et seq., Ala.Code 1975. On November 20, 2007, Gwin and Turner sued Nationwide Life Insurance Company and Nationwide Retirement Solutions, Inc. (collectively, “Nationwide”), the Alabama State Employees Association (“ASEA”), and PEBCO, Inc.; that action was assigned case no. CV-07-4052 (“the Gwin litigation”). Gwin and Turner alleged that all the defendants had engaged in misconduct with respect to their management and supervision of the plan. The complaint stated claims of breach of fiduciary duty, conversion, and breach of contract as to each defendant. Gwin and Turner sued individually and on behalf of a putative class of similarly situated participants in the plan.
On December 4, 2008, the Board moved to intervene in the action on its own behalf and on behalf of the State. ASEA, PEB-CO, and Nationwide opposed the Board’s motion to intervene. On December 15, 2008, without ruling on the Board’s motion, the trial court entered a protective order that stated that the documents and materials produced in discovery in the Gwin litigation were to be treated as confidential and protected from disclosure to third parties. Also without ruling on the Board’s motion to intervene, the trial court stated *753 that it “allow[ed] sort of a conditional intervention” of the Board for the purposes of “mak[ing] all of the lawyers and parties subject to the protective order.”
On June 16, 2009, the trial court entered an order stating:
“At the present there are significant disputes as to discovery. In particular, the State of Alabama has made certain discovery requests and apparently seeks enforcement of those requests outside of this case. It should be noted that the court has allowed the State to participate pending a final ruling on the State’s motion to intervene and has bound the State to the provisions of all protective orders.... [Pjending a hearing, all parties including the State of Alabama shall be bound by previous discovery orders. The Court will take appropriate action concerning the violation of any order.”
The trial court never ruled on the Board’s motion to intervene, and it is undisputed that the Board withdrew its motion on July 1, 2009.[1] On July 9, 2009, PEBCO filed a motion styled “Emergency Motion to Enforce Court’s Orders.” In it, PEBCO requested that the trial court enjoin the Board from “issuing administrative subpoenas, commanding the appearance of witnesses and the production of documents, regarding matters relating to the issues involved in” the Gwin litigation. PEBCO stated that on June 29, 2009, the Board had issued a subpoena to a representative of the Alabama Securities Commission (“ASC”). In that subpoena, the Board requested the production of documents related to the plan, including documents regarding the relationships between ASEA, Nationwide, and PEBCO; the duties and services provided by Nationwide; and the financial activities of Nationwide, ASEA, and PEBCO with respect to the plan. PEBCO did not specify any violation of the protective order.
On July 16, 2009, the trial court entered the following order:
“This cause coming before the Court on the Emergency Motion to Enforce the Court’s Orders filed herein by PEB-CO, Inc. Upon consideration of the Motion and for good cause shown, it is Ordered that said Motion is due to be and hereby is granted. It is further Ordered that pending further Order of this Court, the Alabama State Personnel Board shall not issue any further subpoenas commanding the appearances of witnesses and/or the production of any documents in regard to any matters relating to any issues involving this litigation. Any commission, board and/or agency receiving any such purported subpoenas from the Alabama State Personnel Board is hereby protected and shall not comply with any such purported action and/or subpoena.”
On July 29, 2009, the Board filed a notice of appeal under Rule 4(a)(1)(A), Ala. R.App. P., as from an “interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction.” On the same day, the Board also filed a petition for a writ of mandamus requesting *754 that this Court order the trial court to set aside its July 16, 2009, order. This Court heard oral argument in case no. 1081436 and case no. 1081462 on February 10, 2010.

Analysis

We must first determine whether a petition for a writ of mandamus or an appeal is the appropriate means of obtaining appellate review under the circumstances presented to us. The Board filed a motion to intervene in the Gwin litigation. However, the trial court never ruled on that motion, and the Board withdrew it on July 1, 2009. Rule 24, Ala. R. Civ. P., Committee Comments on 1973 Adoption, state: “Leave of court is not required for the filing of a motion to intervene. An order authorizing intervention is, of course, necessary before the would-be in-tervenor becomes a party.” (Emphasis added.) The record does not show that the trial court ever entered an order authorizing intervention, and no party to the appeal contends that such an order exists. Under our rules of procedure, therefore, the Board was not a party to the Gwin litigation.
In its July 16, 2009, order, the trial court prohibited the Board from issuing subpoenas. That order constituted an injunction. See, e.g., Kappa Sigma Fraternity v. Price-Williams, 40 So.3d 683, 690 (Ala.2009) (“ ‘An injunction is defined as “[a] court order commanding or preventing an action.” Black’s Law Dictionary 788 (7th ed.1999).’ Dawkins v. Walker, 794 So.2d 333, 335 (Ala.2001).”). The proper means of obtaining appellate review in such circumstances as are here presented, where the trial court has enjoined the activity of a nonparty, is by means of an appeal. See, e.g., Samnorwood Indep. Sch. Dist. v. Texas Educ. Agency, 533 F.3d 258, 265 n. 16 (5th Cir.2008) (“Other circuits have held that there was standing [for an appeal by a nonparty] in similar circumstances. See United States v. Kirschenbaum, 156 F.3d 784, 794 (7th Cir.1998) (‘[N]on-parties who are bound by a court’s equitable decrees have a right to move to have the order dissolved, ... and other circuits have held that where a non-party is purportedly bound by an injunction, the non-party may bring an appeal rather than face the possibility of a contempt proceeding.’); In re Estate of Ferdinand Marcos Human Rights Litig., 94 F.3d 539, 544 (9th Cir.1996) (finding standing for nonparty where injunction confronted nonparty ‘with the choice of either conforming its conduct to the dictates of the injunction or ignoring the injunction and risking contempt proceedings’); In re Piper Funds, Inc., Institutional Gov’t Income Portfolio Litig., 71 F.3d 298, 301 (8th Cir.1995) (‘A nonparty normally has standing to appeal when it is adversely affected by an injunction.’).”). We find these authorities persuasive. Accordingly, the Board’s petition for a writ of mandamus in case no, 1081436 is dismissed, and we will consider the appeal in case no. 1081462.
The Board and the defendants in the Gwin litigation have raised several issues on appeal. However, the threshold question is whether the trial court had jurisdiction over the Board to prohibit it from issuing administrative subpoenas. Under the specific circumstances here presented, we conclude that it did not.
As PEBCO notes, the trial court has authority to control the discovery process in the Gwin litigation,[2] However, as stat *755 ed above, the Board was never made a party to the Gwin litigation.[3] As a result, the trial court had no authority to restrict the Board’s actions through the discovery process. We do not reach the question whether the Board’s status as a party would have made a difference; we simply distinguish those cases dealing with a trial court’s authority to manage discovery.
As authority for the issuance of the subpoenas, the Board relies upon Ala.Code 1975, § 36-26-6(b)(3) (“It shall be the duty of the [B]oard as a body: ... To make investigations ... concerning the enforcement and effect of this article and to require observance of its provisions and the rules and regulations made pursuant thereto.”), § 36-26-8(b)(ll)(‘Tt shall be the duty of the director [of the personnel department] to: ... Make investigations concerning the administration and effect of this article and the rules made thereunder and report the findings and recommendations to the [B]oard.”), § 36-26-14(a) (“The [Board] is hereby authorized and directed to adopt a plan or plans as recommended by the employees of the State of Alabama through the [ASEA] providing for tax-deferred annuity and deferred compensation programs for the salaried employees of the State of Alabama. The [Board] is hereby authorized to adopt and arrange for consolidated billing and efficient administrative services through the [ASEA] or its designated agent in order that any such plans adopted shall operate without cost to or contribution from the State of Alabama except for the incidental expense of administering the payroll salary-reductions and the remittance thereof to the trustee or custodian of the plan or plans.”), and § 36-26-40 (“The director shall make studies and report to the [B]oard upon all matters touching the enforcement and the effect of the provisions of this article and the rules and regulations prescribed thereunder.... The director, in the course of such inquiries, shall have the power to administer oaths, subpoenas and require the attendance of witnesses and the production of books, papers, documents and accounts pertaining to the subject under investigation.”). The Board, as an agency of the State, maintains that it was acting within its statutory authority in issuing the subpoenas that were enjoined by the trial court’s July 16, 2009, order. PEBCO contends otherwise.
Although § 14, Alabama Constitution of 1901, prohibits an action against the State and § 43 mandates that each branch observe the boundaries between their spheres of authority, this Court has recognized specific instances where a citizen has a remedy against a State official. See the seminal case of Aland v. Graham, 287 Ala. 226, 229-30, 250 So.2d 677, 679 (1971) (“[T]here are four general categories of actions that we have held do not come within the prohibition of Sec. 14[, Ala. Const.1901]. (1) Actions brought to compel State officials to perform their legal *756 duties. (2) Actions brought to enjoin State officials from enforcing an unconstitutional law. (3) Actions to compel State officials to perform ministerial acts. (4) Actions brought under the Declaratory Judgments Act, Tit. 7, § 156 et seq., Code 1940, seeking construction of a statute and how it should be applied in a given situation.”'[4]). Venue for proceedings against a State official is the county of official residence. Tri-State Corp. v. State ex rel. Gallion, 272 Ala. 41, 46, 128 So.2d 505, 509 (1961). We cannot say that venue here has been waived; the Board is not even a party. Because the Gwin litigation is not the proper forum for determining whether the Board is acting within its statutory authority in issuing the subpoenas, that question is not before us. The trial court had no jurisdiction over the Board so as to enjoin a nonparty State agency in the circumstances here presented.[5]

Conclusion

Based on the foregoing, we dismiss the petition for a writ of mandamus in case no. 1081436, and in case no. 1081462 we reverse the trial court’s July 16, 2009, order enjoining the Board from issuing subpoenas and remand the ease to the trial court.
1081436 — PETITION DISMISSED.
COBB, C.J., and WOODALL, STUART, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
SMITH, J., recuses herself.
1081462 — JULY 16, 2009, ORDER REVERSED AND CASE REMANDED.
WOODALL, STUART, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
COBB, C.J., dissents.
SMITH, J., recuses herself.

. The dissenting opinion of the Chief Justice states: "At this point in the proceeding, the question whether the [Board] is in this case has yet to be addressed.” 45 So.3d at 756. However, at oral argument, counsel for all participants in the proceeding before this Court agreed that the Board's motion for leave to intervene had indeed been withdrawn before the ruling made the basis of this appeal. No provision of the Alabama Rules of Civil Procedure requires the trial court's approval of the withdrawal of a motion to intervene. "The effect of withdrawal of a motion is to leave the record as it stood prior to the filing as though the motion had never been made.” 56 Am.Jur.2d Motions, Rules & Orders § 32 (2009).

. See Ex parte Horton Homes, Inc., 774 So.2d 536, 539 (Ala.2000) (" The Alabama Rules of Civil Procedure vest broad discretion in the trial court to control the discovery process *755 and to prevent its abuse...' Ex parte Thomas, 628 So.2d 483, 485 (Ala.1993) (citing Ex parte Nissei Sangyo America, Ltd., 577 So.2d 912 (Ala.1991)).”).

. As previously noted, the protective order stated that the documents and materials produced in discovery in the Gwin litigation were to be treated as confidential and were to be protected from disclosure to third parties. To the extent that the Board had obligated itself as a nonparty to comply with the protective order, PEBCO, also as previously noted, did not identify in its motion any violation of the protective order. We therefore need not reach the question whether the protective order restricted the Board’s statutory investigative authority and, if so, whether an agreement by the Board in ongoing litigation between private parties to refrain from the discharge of its statutory duties is enforceable.

. Subsequent caselaw has added two other actions:
"(5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law.”
Drummond Co. v. Alabama Dep't of Transp., 937 So.2d 56, 58 (Ala.2006)(emphasis omitted).

. The Chief Justice’s dissenting opinion states: "It seems to me that a considerable saving of resources, both for the parties and for our judicial system, could be realized by simply remanding this cause to the trial court for a ruling on the question whether the Board is a necessary party to this litigation.” 45 So.3d at 757. No attempt has been made by any party to join the Board as a necessary party. Indeed, in the trial court, PEBCO opposed the Board's motion to intervene. The waste of judicial resources condemned by the Chief Justice would flow from remanding this case to the trial court for consideration of issues not before it.