YATES, Presiding Judge.
D.M.P., the presumed father, and M.C.M.P.C., the mother, were married in March 1981.[1] On May 20, 1994, the moth. *506 er filed a complaint for a divorce, stating that two children, L.P. and B.N.P., had been born of the marriage. On August 19, 1994, the trial court entered a final judgment of divorce, incorporating the terms of the parties’ settlement agreement. The settlement agreement provided that the parties would have joint custody of the children, with the mother having primary physical custody and the presumed father having rights of visitation. The presumed father agreed to pay more in child support than was required under the child-support guidelines. L.P., the older child, has now reached the age of majority; however, the presumed father is still paying child support for B.N.P., the child that is the subject of this appeal. B.N.P. was three years old at the time of the divorce.
Following the divorce, the presumed father exercised his visitation in accordance with the settlement agreement; in addition, he visited with the children in the mother’s home once or twice during the week and celebrated Christmas morning with the children at the mother’s home.
The mother married L.M.C., Jr., the stepfather, in June 1995. In 1999, the stepfather and the mother prevented the presumed father from exercising mid-week visitation. In December 1999, the mother gave the presumed father a written note that stated that she had an extramarital affair with the stepfather while she and the presumed father had been married and that B.N.P. was the result of that affair. The mother further contended that she had DNA test results to prove that the stepfather was B.N.P.’s biological father. The alleged DNA test results were never made part of the record. The presumed father continued to exercise weekend visitation and other visitation until Spring 2000, when the stepfather and the mother prevented the presumed father from exercising any visitation with B.N.P.
On August 15, 2000, the stepfather filed a petition to adopt B.N.P., which the probate court dismissed. On July 11, 2003, this court affirmed the probate court’s dismissal, without an opinion. L.M.C. v. D.M.P., (No. 2020119, July 11, 2003) 891 So.2d 442 (Ala.Civ.App.2003)(table).
On January 19, 2001, the presumed father filed a petition for a rule nisi, alleging that the mother and the stepfather had prevented him from exercising visitation with B.N.P. The mother counterclaimed, seeking to modify the presumed father’s visitation. On October 21, 2002, the trial court held a hearing on the matter. The mother and the presumed father entered into an agreement in open court to undergo psychological counseling and to resume visitation upon the psychologist’s recommendation. Subsequently, the trial court found the stepfather to be in criminal contempt for willful and intentional interference with the visitation of the presumed father and B.N.P.
On April 16, 2003, B.N.P., by and through her maternal grandmother, filed a motion pursuant to Rule 60(b), Ala. R. Civ. P., to set aside the divorce judgment entered on August 19, 1994. B.N.P. sought to have a guardian ad litem appointed, because she was not a party to the divorce action, and she asked that paternity tests be ordered. The trial court denied the motion. B.N.P. appeals.
Rule 60(b) provides, in pertinent part:
*507 “On motion and upon such terms as are just, the court may relieve a party or a party’s legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ...; (4) the judgment is void; (5) ... it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken.”
(Emphasis added.) B.N.P. was not a party to the 1994 divorce proceeding from which she is now purporting to seek relief in order to challenge the presumed father’s paternity. B.N.P. argues throughout her brief to this court that because she was not a party to the divorce action and was not represented by a guardian ad litem, she is not bound by that judgment. It is well settled that
“[a] divorce judgment designating a child as the child ‘of the parties’ is a paternity determination precluding the parties from disputing the child’s paternity in the future. D.D. v. C.L.D., 600 So.2d 265 (Ala.Civ.App.1991). Further, ‘a paternity adjudication in a divorce action, which is necessary for purposes of support and inheritance, is res judica-ta to the parties in the divorce action, but not binding on the child unless the child is a party.’ D.D., supra.”
State ex rel. Fuller v. Fuller, 623 So.2d 332, 335 (Ala.Civ.App.1993). Because B.N.P. is not bound by the divorce judgment, she is not entitled to relief from that judgment.
It appears that B.N.P. sought relief under Rule 60(b) because there is no provision in the Alabama Uniform Parentage Act (“AUPA”), § 26-17-1 et seq., Ala.Code 1975, permitting a child to bring a separate action to prove the nonexistence of a father and child relationship when the father is presumed to be the father because the child was born during the marriage.
Section 26-17-5, Ala.Code 1975, provides:
“(a) A man is presumed to be the natural father of a child if any of the following apply:
“(1) He and the child’s natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court.
. “(2) Before the child’s birth he and the child’s natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and
“a. If the attempted marriage may be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after the termination of the attempted marriage by death, annulment, declaration of invalidity, or divorce; or
“b.. If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.
“(3) After the child’s birth, he and the child’s natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and
“a. He has acknowledged his paternity of the child in writing, the *508 writing being filed with the appropriate court or the Office of Vital Statistics; or
“b. With his consent, he is named as the child’s father on the child’s birth certificate; or
“c. He is otherwise obligated to support the child either under a written voluntary promise or by court order.
“(4) While the child is under the age of majority, he receives the child into his home or otherwise openly holds out the child as his natural child.
“(5) He acknowledges his paternity of the child in a writing filed in accordance with provisions of the legitimation statute.
“(6) He and the child’s mother have executed an affidavit of paternity in accordance with the provisions of this chapter.
“(b) A presumption of paternity under this section may be rebutted in an appropriate action only by clear and convincing evidence. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man.”
In the present case, D.M.P. is presumed to be B.N.P.’s father pursuant to § 26-17-5(a)(1) because B.N.P. was born in 1991 during the marriage.
Section 26-17-6 sets out who may bring an action to determine a father and child relationship under the AUPA and under what circumstances such an action may be brought. That section provides, in relevant part:
“(a) A child, a child’s natural mother, or a man presumed to be the child’s father under subdivision (1), (2), or (3) of Section 26-17-5(a), may bring an action at any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (S) of Section 26-17-5(a), but for purposes of support, the action shall be brought before the child reaches the age of 19; or
“(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (k) or (5) or (6) of Section 26-17-5 (a).”
(Emphasis added.)
Subsection (a) of § 26-17-6 applies only to those actions to establish the “existence” of the father and child relationship when the father and child relationship is presumed under § 26-17-5(a)(l), (2), or (3). Here, B.N.P. is seeking to determine the “nonexistence” of the father and child relationship presumed under § 26-17-5(a)(1). We note that subsection (b) of § 26-17-6 applies to actions to determine the existence or nonexistence of the father and child relationship presumed under § 26-17-5(a)(4), (5), or (6); however, § 26-17-5(a)(4), (5), and (6) are not applicable to the facts of this case. There is no provision in the AUPA permitting an action to determine the nonexistence of the father and child relationship presumed under § 26-17-5(a)(l).
In Ex parte Presse, 554 So.2d 406 (Ala. 1989), the presumed father and the mother were married when the child was born. Before the birth of the child, the mother had engaged in an adulterous relationship with another man, who was the child’s biological father. The presumed father and the mother divorced a few years later, and the mother was awarded primary custody and the presumed father was permitted liberal visitation, which he fully exercised. The mother then married the child’s biological father. Six years later, the mother *509 and the biological father filed a petition to establish the paternity of the child. Our supreme court held that the mother was barred by the doctrine of res judicata from bringing a paternity action, because she was a party to the original divorce and custody action. 554 So.2d at 411. The supreme court went on to hold that under the AUPA a biological father,
“though he later marries the mother and lives with the mother and child, has no standing to challenge the presumed paternity of that child. Put another way, so long as the presumed father persists in maintaining his paternal status, not even the subsequent marriage of the child’s mother to another man can create standing in the other man to challenge the presumed father’s parental relationship.”
554 So.2d at 418. In the present case, B.N.P. is not entitled to relief pursuant to Rule 60(b), and she does not have standing under the AUPA to challenge the presumed father’s paternity so long as he persists in claiming paternity. Cf. D.S.M. v. L.M., 854 So.2d 1140 (Ala.Civ.App.2002)(child was not barred by former statute of limitations applicable to actions to establish the existence of a father and child relationship where action was to establish the nonexistence of a father and child relationship and the presumed father no longer persisted in maintaining paternity).
B.N.P. cites Floyd v. Floyd, 701 So.2d 1151 (Ala.Civ.App.1997), for the proposition that “ ‘a matter of paternity does not have to be determined exclusively under the AUPA.’ ” 701 So.2d at 1153 (quoting J.H.B. v. S.E.B., 668 So.2d 15, 17 (Ala.Civ.App.1994)). In Floyd, the wife filed a complaint for a divorce, seeking custody of the one child born during the marriage. The husband counterclaimed, requesting a paternity determination. The trial court divorced the parties, but it declined to rule on the issue of paternity and, instead, reserved the issue of the child’s paternity for the juvenile or family court to decide. On appeal, this court reversed the judgment and remanded the case for the trial court to address the issue of paternity, holding that the issue of paternity “ ‘may ... be properly raised in a divorce action, because a divorce decree which designates a child to be “of the parties” is itself a paternity determination,’ and ‘[i]n a custody or divorce action, the issue of parentage is central to the disposition of the case.’ ” 701 So.2d at 1153, quoting M.M. v. C.M., 600 So.2d 316, 317 (Ala.Civ.App.1992). The facts in Floyd are distinguishable from the facts in this case because the mother in this case did not raise the issue of paternity in the 1994 divorce action. Had she raised the issue of paternity during the divorce action, then the trial court could have made B.N.P. a party to the case and addressed the issue of paternity pursuant to its equitable jurisdiction.
• In conclusion, we affirm the judgment of the trial court denying B.N.P.’s Rule 60(b) motion, because B.N.P. was not a party to or bound by the 1994 divorce judgment and is, therefore, not entitled to seek relief from the judgment entered pursuant to those proceedings.
The presumed father’s request for an attorney fee on appeal is granted in the amount of $1,500.
AFFIRMED.
CRAWLEY and PITTMAN, JJ., concur in the result, with writings.
THOMPSON, J., concurs in the result, without writing.
MURDOCK, J., concurs in the result, with writing, which CRAWLEY and PITTMAN, JJ., join.

. Judge Crawley, in his special writing concurring in the result, complains that the parties should not remain anonymous. Although this case did not arise out of a juvenile court proceeding, it is an action attempting to challenge paternity, which typically is a matter for the juvenile courts. In the present case, B.N.P.'s attorney chose the trial tactic of collaterally attacking a divorce judgment by filing a Rule 60(b), Ala. R. Civ. P., motion. The attorney's choice to use that forum should not prevent this court from protecting the anonymity of the parties. The obvious purpose of protecting anonymity where paternity is challenged is to prevent the social stigma attached to such á proceeding. Given the personal *506 and intimate matters concerned and noting the fact that the presumed father, who seeks to maintain a relationship with the child born during his marriage to the mother, used anonymous terms, we have chosen to preserve the parties’ anonymity. Further, pursuant to § 26-10A-26, Ala.Code 1975, anonymous terms were used for these same parties when the stepfather sought to adopt B.N.P. in the probate court, see L.M.C. v. D.M.P., (No. 2020119, July 11, 2003) 891 So.2d 442 (Ala.Civ.App.2003)(table). There is no reason to discontinue protecting the privacy and confidentiality of the parties.