936 So.2d 538 (2005)
Kassi Ray CRAVENS
v.
Chad Michael CRAVENS.
2040004.
Court of Civil Appeals of Alabama.
September 9, 2005.
Rehearing Denied December 16, 2005.
Certiorari Denied February 10, 2006.
*539 Christopher G. McCary of Legal Services Alabama, Inc., Anniston, for appellant.
Shannon L. Millican, Gadsden, for appellee.
Alabama Supreme Court 1050382.
PER CURIAM.
Kassi Ray Cravens ("the wife") appeals from a judgment entered by the Calhoun Circuit Court in which it declined to hold that DNA evidence rebutted the presumption that her former husband Chad Michael Cravens ("the husband") is the father of Jon Michael Cravens ("the child"), who was born during the marriage of the wife and the husband.[1]
The parties were married in August 2000. Thereafter, the wife gave birth to the child in October 2000. In December 2003, the husband sued the wife for a divorce on the grounds of an irretrievable breakdown of the marriage and incompatibility. Among other things, he sought pendente lite and permanent legal custody of the child. The trial court granted the husband pendente lite custody. Answering *540 the complaint, the wife denied that the husband is the biological father of the child. She also counterclaimed for custody of the child. Contemporaneously, the wife moved the trial court for a DNA test. The husband objected to the wife's motion on the grounds (1) that he was the biological father of the child and (2) that the child was born during the marriage. However, the trial court granted the wife's motion, and the husband gave a DNA sample for testing.
On May 5, 2004, the trial court held a hearing at which it received evidence ore tenus. The DNA test results, which were admitted by agreement of the parties, excluded the husband as the biological father of the child. However, despite the DNA test results the husband asserted that he was the legal father of the child. The wife admitted that the husband is a good father and that it would not be in the best interest of the child to sever the husband's relationship with the child. Furthermore, the wife testified that she had not previously filed a paternity action because the alleged biological father did not want to have a relationship with the child. At the close of the evidence, the trial court ordered the wife and the husband to alternate custody on a weekly basis until the trial court entered a final judgment.
On June 9, 2004, the trial court entered a final judgment divorcing the husband and the wife and awarding them joint legal and physical custody of the child. Noting that, because the child was born during the marriage, the husband was presumed to be the father of the child under Alabama statutory law, the trial court declined to hold that the DNA evidence had rebutted that presumption. The wife timely appealed.
On appeal, the wife argues that the trial court erred in declining to hold that the DNA evidence rebutted the statutory presumption that the husband was the father of the child. Specifically, she argues that she has standing to challenge the husband's paternity because, she says, she raised the issue during the divorce action. She further argues that her right to custody is superior to the husband's because, she says, a parent's right to custody is superior to that of a nonparent.
The Alabama Uniform Parentage Act ("the AUPA"), codified at § 26-17-1 et seq., Ala.Code 1975, establishes statutory criteria for determining the paternity of a child. In pertinent part, § 26-17-5(a)(1) states:
"A man is presumed to be the natural father of a child if any of the following apply:
"(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, . . . ."
(Emphasis added.)[2] Furthermore, § 26-17-6(a) states:
"A child, a child's natural mother, or a man presumed to be the child's father under subdivision (1), (2), or (3) of Section 26-17-5(a), may bring an action at any time for the purpose of declaring *541 the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a), but for purposes of support, the action shall be brought before the child reaches the age of 19."
(Emphasis added.)
In Ex parte C.A.P., 683 So.2d 1010 (Ala.1996), the Alabama Supreme Court held that an alleged biological father did not have standing to challenge a child's paternity where the presumed father persistently asserted his parental status.[3] In Ex parte C.A.P., a man claiming to be the biological father of a child who was born while the mother was married to someone else sought to establish his paternity. The Alabama Supreme Court stated:
"`[T]he legal question is whether a man has standing to bring an action seeking to declare a child illegitimate and to have himself declared the father of that child. This is not permitted under the [AUPA], as long as there is a presumed father, pursuant to § 26-17-5(a)(1), who has not disclaimed his status as the child's father; consequently, another man . . . has no standing to challenge the presumed paternity of that child. Put another way, so long as the presumed father persists in maintaining his parental status, not even the subsequent marriage of the child's mother to another man can create standing in the other man to challenge the presumed father's parental relationship.'"
Ex parte C.A.P., 683 So.2d at 1011-12 (quoting Ex parte Presse, 554 So.2d 406, 418 (Ala.1989)) (emphasis added). In Ex parte C.A.P., the supreme court further stated that an unwed father's interest in establishing paternity is outweighed by "the obvious objectives of the Alabama Uniform Parentage Act, which are to provide for the psychological stability and general welfare of the child and to afford legitimacy to children whenever possible." Ex parte C.A.P., 683 So.2d at 1012.
In Hooten v. Hooten, 754 So.2d 634 (Ala. Civ.App.1999), a mother sought to reopen a determination of paternity in a divorce judgment in order to establish that the presumed father, the mother's former husband, was not the biological father of the child born during the marriage. This court held that "the mother had no standing to reopen the determination in the divorce judgment that the father is the biological father of the child, either pursuant to Rule 60(b)[, Ala. R. Civ. P.,] or pursuant to § 26-17A-1." 754 So.2d at 635. Furthermore, this court stated:
"Our supreme court has held that no one, including the mother of the child, has standing to challenge a presumed father's paternity as long as the presumed father persists in claiming paternity of the child. Ex parte C.A.P., 683 So.2d 1010 (Ala.1996); Ex parte Presse, 554 So.2d 406 (Ala.1989). Because the father persists in claiming his paternity of the child, the mother has no standing to challenge the paternity adjudication of the divorce judgment."
Hooten, 754 So.2d at 635 (emphasis added).
In B.N.P. v. D.M.P., 896 So.2d 505 (Ala. Civ.App.2004), this court affirmed a trial *542 court's judgment holding that a child, who was born during the marriage of the mother to the presumed father, did not have standing to contest the paternity of the presumed father after the presumed father and the mother had divorced.
In a special writing in which two other judges joined, Judge Murdock stated that "[t]he AUPA purports to ... govern disputes over paternity, whether raised in a divorce action or in an independent action." 896 So.2d at 511 (Murdock, J., concurring in the result, with Crawley and Pittman, JJ., joining). Judge Murdock, quoting Hooten, supra, stated that "`[o]ur supreme court has held that no one, including the mother of the child, has standing to challenge a presumed father's paternity as long as the presumed father persists in claiming paternity of the child.' 754 So.2d at 635 (citing Ex parte Presse and Ex parte C.A.P., 683 So.2d 1010 (Ala. 1996))." B.N.P., 896 So.2d at 511-12 (footnote omitted). Furthermore, Judge Murdock noted that "[a]side from the presumed father (who persists in claiming paternity) the other two parties named in § 26-17-6(a), Ala.Code 1975, are the child and the child's mother. I see no difference in the treatment of those two parties by the statute." B.N.P., 896 So.2d at 511 n. 3.
In the case now before us, the husband is the presumed father because the child was born during the marriage. Ex parte C.A.P., 683 So.2d at 1011. The wife challenged the paternity of the husband in the divorce proceeding.[4] Throughout the proceeding, the husband persisted in asserting his paternity. Indeed, the husband persisted in asserting his paternity even after the DNA test results indicated that he was not the biological father of the child. Moreover, the same policy considerations involved in Ex parte C.A.P.i.e., providing for the psychological well-being of the child and affording legitimacy to the child whenever possibleapply to the present case. Ex parte C.A.P., supra. Consequently, applying the reasoning of Judge Murdock, joined by Judge Crawley and Judge Pittman, in B.N.P., we now conclude, under the facts of the case now before us, that the wife does not have standing to challenge the paternity of the husband. See Hooten, supra; B.N.P., supra.
Even though this court has held that "the mother of a child born during a marriage may bring a paternity action to rebut the strong presumption that the husband is the father of the child," S.E.B. v. J.H.B., 605 So.2d 1230, 1232 (Ala.Civ.App.1992); see also Goodno v. Cobb, 567 So.2d 376 (Ala.Civ.App.1990), those cases preceded our supreme court's decision in Ex parte C.A.P.
AFFIRMED.
CRAWLEY, P.J., and BRYAN, J., concur.
MURDOCK, J., concurs specially, with writing.
THOMPSON, J., concurs in the result, without writing.
PITTMAN, J., concurs in the result, with writing.
*543 MURDOCK, Judge, concurring specially.
I fully agree with the reasoning of the main opinion applying the rule that "`no one, including the mother of the child, has standing to challenge a presumed father's paternity as long as the presumed father persists in claiming paternity,'" 936 So.2d at 541 (quoting Hooten v. Hooten, 754 So.2d 634, 635 (Ala.Civ.App.1999)) (emphasis omitted), including the explanation of the policy objectives underlying that rule. In addition, this court made the following statement regarding the nature of and reasons for that rule in P.G. v. G.H., 857 So.2d 823, 829 (Ala.Civ.App.2002):
"The Presse Court also noted with approval the position that `"the presumption that the husband of the mother of a child born during marriage is the father of that childis often said to be one of the strongest presumptions known to the law."' [Ex parte Presse, 554 So.2d 406, 413 (Ala.1989)] (quoting Note, R. McG. & C.W. v. J.W. & W.W.: The Putative Father's Right to Standing to Rebut the Marital Presumption of Paternity, 76 N.W.U.L.Rev. 669 (1981)). . . . [T]he Presse Court quoted at great length from the plurality opinion in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). In light of [the biological father's] evidentiary argument that he rebutted the presumption of [the presumed father's] paternity, we note the following portion of Michael H. quoted with approval by our Supreme Court in Ex parte Presse:

"`"[The biological father] asserts that requirements of procedural due process prevent the State from terminating his liberty interest in his relationship with his child without affording him an opportunity to demonstrate his paternity in an evidently hearing. We believe this claim derives from a fundamental misconception of the nature of the California statute. While § 621 is phrased in terms of a presumption, that rule of evidence is the implementation of a substantive rule of law. California declares it to be, except in limited circumstances, irrelevant for paternity purposes whether a child conceived during and born into an existing marriage was begotten by someone other than the husband and had a prior relationship with him. As the Court of Appeal phrased it:
"`"`"The conclusive presumption is actually a substantive rule of law based upon a determination by the Legislature as a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned."' [Michael H. v. Gerald D.,] 191 Cal. App.3d [995,] 1005, 236 Cal.Rptr. [810,] 816 [(1987)], quoting Vincent B. v. Joan R., 126 Cal.App.3d [619], at 623, 179 Cal.Rptr. [9], at 10 [(1981)].
"`"Of course the conclusive presumption not only expresses the State's substantive policy but also furthers it, excluding inquiries into the child's paternity that would be destructive of family integrity and privacy."'
"Ex parte Presse, 554 So.2d at 415 (quoting Michael H. v. Gerald D., 491 U.S. at 119-20, 109 S.Ct. 2333) (emphasis omitted)."
PITTMAN, Judge, concurring in the result.
Although I joined the special writing in B.N.P. v. D.M.P., 896 So.2d 505 (Ala.Civ. App.2004), that is relied upon in the per *544 curiam opinion, in my view Hooten v. Hooten, 754 So.2d 634 (Ala.Civ.App.1999), is the primary authority that compels affirmance in this case. Hooten, by interpreting Ex parte C.A.P., 683 So.2d 1010 (Ala. 1996), as having taken the position that "no one, including the mother of the child, has standing to challenge a presumed father's paternity as long as the presumed father persists in claiming paternity of the child" (754 So.2d at 635), overruled by implication the contrary holdings in S.E.B. v. J.H.B., 605 So.2d 1230 (Ala.Civ.App. 1992), and Goodno v. Cobb, 567 So.2d 376 (Ala.Civ.App.1990). The pertinent special writing in B.N.P. relied upon Hooten's reading of C.A.P. and applied that reading to a new procedural settinga child's paternity challenge. It remains to be seen whether the Alabama Supreme Court will eventually espouse Hooten's gloss on C.A.P., but Hooten does support affirmance, and I therefore concur in the result to affirm.
NOTES
[1] The husband initially filed this action in the Etowah Circuit Court; however, the Etowah Circuit Court granted the wife's motion to transfer the action to the Calhoun Circuit Court.
[2] "[Section] 26-17-5(a)(1) does not require that the child be conceived during the marriage to make the husband the presumed father. Rather, all that is required, under either caselaw or statute, is that the child be born during the marriage. The Code uses the word `birth' as the benchmark for establishing presumptions of paternity, not the time of conception. . . .

"`[S]ince the husband was married to the mother at the time of the birth, we find that § 26-17-5(a)(1) controls and that the husband is the presumed father under that section.'"
Ex parte C.A.P., 683 So.2d 1010, 1012 (Ala.1996)(quoting Foster v. Whitley, 564 So.2d 990, 991 (Ala.Civ.App.1990)).
[3] "`When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.'" P.G. v. G.H., 857 So.2d 823, 826 (Ala.Civ.App. 2002) (quoting State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999)). "'Standing imparts justiciability to the issues raised. . . .'" Langham v. Wampol, 902 So.2d 58, 62 (Ala.Civ.App.2004) (quoting Cassady v. Claiborne, 590 So.2d 339, 341 (Ala.Civ.App. 1991), citing, in turn, Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).
[4] This court has noted that under § 26-17-9(a) "an action for paternity may be joined with an action for divorce." Ex parte Jones, 896 So.2d 553, 555 (Ala.Civ.App.2004). Additionally, "`a paternity adjudication in a divorce action, which is necessary for purposes of support and inheritance, is res judicata to the parties in the divorce action. . . .' Powers v. State, 622 So.2d [400], 401 [(Ala.Civ.App. 1993)]." Gann v. Gann, 705 So.2d 509, 511 (Ala.Civ.App.1997).