THOMPSON, Presiding Judge.
J.D.G. (“the husband”) filed a complaint seeking a divorce from D.A.G. (‘The wife”). In his divorce complaint, the husband al *148 leged that he and the wife had been married since 1996 and that a child (“the child”) had been born of the marriage in 2008. The husband alleged that the wife had informed him that he was not the biological father of the child. The husband sought a divorce on the ground of adultery and, among other things, requested that the trial court order a DNA paternity test. On June 25, 2012, the trial court ordered that the wife, the husband, and the child submit to DNA paternity testing.
After conducting a pendenté lite hearing, on July 16, 2012, the trial court entered a pendente lite order pertaining to financial and custody issues while the divorce action was pending. In addition, in that July 16, 2012, order, the trial court specifically found that, although DNA testing had revealed that the husband was not the biological father of the child, the husband was “persisting in his status as the legal father, and, therefore, under § 26-17-607, Ala.Code 1975, he remains the only legal father of this child.”
On July 17, 2012, the wife filed a “motion to reconsider” the July 16, 2012, pen-dente lite order. In that motion, the wife argued that, because he had sought a determination of the paternity of the child, the husband could no longer persist in his claim that he is the child’s father. On July 18, 2012, the trial court entered an order denying the wife’s “motion to reconsider,” concluding that the husband’s seeking paternity testing was not inconsistent with persisting in his status as the child’s legal father and noting that the paternity test also served as evidence on the issue of the wife’s adultery.
Thereafter, the wife filed an answer and a counterclaim seeking a divorce. The wife also filed a motion, which the trial court granted, requesting that a guardian ad litem be appointed for the child.
On November 9, 2012, D.F.H. filed a motion seeking to intervene in the divorce action between the wife and the husband. In his motion, D.F.H. alleged that he is the biological father of the child born while the wife and the husband were married, and he sought an adjudication of his paternity. In his motion to intervene, D.F.H. alleged that the husband had acknowledged that D.F.H. was the biological father of the child, and, therefore, D.F.H. argued, the husband had placed the issue of the child’s paternity before the court.
The husband objected to D.F.H.’s motion to intervene, contending that he “vigorously persists in his status as the legal father” of the child.
On November 12, 2012, the trial court entered an order in which it denied D.F.H.’s motion to intervene. In that order, the trial court again determined that the husband persisted in his status as the child’s legal father and that, therefore, under § 26-17-607, no other person could seek to disprove the husband’s paternity of the child. In addition, the trial court stated:
“The court finds that the presumption that [the husband] is the father of the child born of his marriage is among the weightiest of presumptions in the law, and the relationship between [the child and the husband] as daughter and father should not be overcome even if the allegations of [D.F.H.] are true. [D.F.H.] assumed the risk that this very circumstance would occur when he entered into a sexual relationship with [the wife]. While [D.F.H.’s] consequences are substantial, the court does not have the authority to overturn the long-standing law in the area — law which protects innocent children from the mistakes of adults.”
On November 19, 2012, the child’s guardian ad litem filed a motion asking the *149 trial court to suspend the husband’s visitation. The guardian ad litem stated that he had interviewed the child after the child had made certain statements about bathing with and sleeping naked with the husband. Based on that conversation, the guardian ad litem believed that an investigation should be made into the child’s statements.
The trial court conducted an emergency hearing on the guardian ad litem’s motion on November 20, 2012. That same day, the trial court entered an order in which it temporarily suspended the husband’s visitation with the child pending an investigation by the Department of Human Resources (“DHR”) and another child-services agency. In its November 20, 2012, order, the trial court specifically ordered that “the [husband], the [wife], [D.F.H.], and their families are not to discuss [the concerns raised by the wife and the guardian ad litem regarding the husband’s conduct] with the child.” The trial court then stated that it had ordered that the investigation into the guardian ad litem’s and the wife’s concerns be expedited.
On November 24, 2012, D.F.H. filed a motion asking the trial court to reconsider its November 12, 2012, denial of his motion to intervene. The trial court denied that motion on December 3, 2012.
D.F.H. filed a notice of appeal on December 13, 2012, arguing that the trial court had erred in denying his motion to intervene and that the trial court had violated his right to due process in entering its November 20, 2012, order.
As an initial matter, we note that none of the parties has addressed this court’s jurisdiction to consider that part of D.F.H.⅛ appeal challenging the November 20, 2012, order. D.F.H. has argued that the trial court violated his right to due process by ordering that he could not discuss with the child the concerns raised by the guardian ad litem and into which DHR was conducting an investigation. Specifically, D.F.H. contends that the trial court could not enjoin him, a nonparty to the divorce action, from taking certain action with regard to the child.
The trial court’s November 20, 2012, order clearly was an interlocutory order intended to remain in effect while DHR conducted its investigation and while the husband’s visitation rights were temporarily suspended. Even assuming D.F.H. was a party to the action such that he could appeal that interlocutory order, such an order will not support an appeal. T.C. v. Mac.M., 96 So.3d 115, 119 (Ala.Civ.App.2011).
However, in his arguments pertaining to the November 20, 2012, order, D.F.H. insists that that part of the November 20, 2012, order prohibiting him from discussing the guardian ad litem’s allegations with the young child constitutes an injunction. A nonparty whose conduct has been enjoined by an order of the trial court may appeal the order; therefore, assuming that the challenged aspect of the November 20, 2012, order amounts to an injunction, D.F.H. has standing to appeal that order. Ex parte State Pers. Bd., 45 So.3d 751, 754 (Ala.2010). Assuming, as D.F.H. argues, that the trial court’s November 20, 2012, order constituted a preliminary injunction, we conclude that D.F.H. may seek appellate review of that preliminary injunction by way of an appeal. However, such an appeal must be timely filed. “The timely filing of a notice of appeal is a jurisdictional act.” Rudd v. Rudd, 467 So.2d 964, 965 (Ala.Civ.App.1985).
An appeal of an order granting an injunction must be filed within 14 days. Rule 4(a)(1), Ala. R.App. P.; Momar, Inc. v. Schneider, 823 So.2d 701, 703-04 (Ala. *150 Civ.App.2001). D.F.H.’s appeal of the November 20, 2012, order was filed on December 13, 2012, in excess of 14 days after the entry of the order. Accordingly, insofar as the November 20, 2012, order granted injunctive relief, this court lacks jurisdiction over D.F.H.’s appeal of that order. Rule 2(a)(1), Ala. R.App. P.; Rudd v. Rudd, supra; and Boykin v. International Paper Co., 777 So.2d 149, 151 (Ala.Civ.App.2000). We therefore dismiss that part of D.F.H.’s appeal pertaining to the November 20, 2012, order. Woods v. Sun-Trust Bank, 81 So.3d 357, 363 (Ala.Civ.App.2011).
However, an order denying a motion to intervene is sufficiently final to support an appeal. Jim Parker Bldg. Co. v. G & S Glass & Supply Co., 69 So.3d 124, 130 (Ala.2011); Jones v. Joines, [Ms. 2110790, Dec. 21, 2012] — So.3d -, - (Ala.Civ.App.2012); Farmers Ins. Exch. v. Raine, 905 So.2d 832, 833 (Ala.Civ.App.2004) (same). This court has held that a postjudgment motion filed after the denial of a motion to intervene tolled the time for appealing the denial of the motion to intervene. R.D.B. v. A.C., 27 So.3d 1283, 1285 (Ala.Civ.App.2009). Accordingly, we conclude that D.F.H. timely appealed the trial court’s denial of his motion to intervene in the divorce action between the wife and the husband.
Various provisions of the Alabama Uniform Parentage Act (“AUPA”), § 26-17-101 et seq., Ala.Code 1975, govern this dispute. Under the AUPA, a man is the presumed father of a child born during his marriage to the child’s mother. § 26-17-204(a)(1), Ala.Code 1975. Under § 26-17-607(a) of the AUPA, a presumed father “may bring an action to disprove paternity at any time.” However, “[i]f the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.” § 26-17-607(a).
In interpreting the predecessor to § 26-17-607(a), our supreme court held that “[a] man not presumed to be the father, but alleging himself to be the father, may institute an action to have himself declared the father only when the child has no presumed father.” Ex parte C.A.P., 683 So.2d 1010, 1012 (Ala.1996).
D.F.H. argues in his brief on appeal that he was seeking to intervene in the divorce action as a matter of right pursuant to Rule 24(a), Ala. R. Civ. P., and that the trial court erred in refusing to grant his motion to intervene.
“ ‘The standard of review applicable in cases involving a denial of a motion to intervene as of right is whether the trial court has acted outside its discretion. See City of Dora v. Beavers, 692 So.2d 808, 810 (Ala.1997). Typically, persons desiring to intervene in a civil action as of right will claim entitlement to intervention under Rule 24(a)(2), Ala. R. Civ. P., which mandates intervention upon timely application if “the applicant claims an interest relating to the property or transaction which is the subject of the action” and is “so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.” Thus, the Alabama Supreme Court has held that under Rule 24(a)(2), the trial court has discretion to determine “whether the potential intervenor has demonstrated: (1) that its motion is timely; (2) that it has a sufficient interest relating to the property or transaction; (3) that its ability to protect its interest may, as a practical matter be impaired or impeded; and (4) that its *151 interest is not adequately represented.” City of Dora, 692 So.2d at 810.’ ”
Baker v. Kennedy, 51 So.3d 339, 340-41 (Ala.Civ.App.2010) (quoting Black Warrior Riverkeeper, Inc. v. East Walker Cnty. Sewer Auth., 979 So.2d 69, 72 (Ala.Civ.App.2007)).
D.F.H. is correct that a biological father does have a right to intervene in a custody action involving a child he claims to have fathered. R.D.B. v. A.C., 27 So.3d 1283, 1287 (Ala.Civ.App.2009). “However, although such a man has a right to intervene, ... the pivotal issue of the biological father’s standing to actually prove his paternity ... turns on whether the legal father persists in his presumption of paternity.” Id.
On appeal, D.F.H. acknowledges that he may not institute an action or intervene to assert a claim seeking to establish his paternity of the child if the husband, pursuant to § 26-17-607(a), “persists in his status as the legal father of the child.” Indeed, our supreme court has explained:
“[T]he legal question is whether a man has standing to bring an action seeking to declare a child illegitimate and to have himself declared the father of that child. This is not permitted under the [AUPA], as long as there is a presumed father, pursuant to [former] § 26-17-5(a)(1) [now § 26-17-204], who has not disclaimed his status as the child’s father; consequently, another man ... has no standing to challenge the presumed paternity of that child. Put another way, so long as the presumed father persists in maintaining his parental status, not even the subsequent marriage of the child’s mother to another man can create standing in the other man to challenge the presumed father’s parental relationship.”
Ex parte Presse, 554 So.2d 406, 418 (Ala.1989).
D.F.H. argues that because the husband in this case requested the DNA paternity testing in his divorce complaint, the husband “challenged his own parental relationship with the child.” Therefore, D.F.H. maintains, the husband has not met the requirements of § 26-17-607 because, D.F.H. claims, the husband cannot be said to be persisting in his claim to be the legal father of the child.[1]
In asserting that argument, D.F.H. equates the husband’s seeking a determination of paternity in his divorce action ■with an action by the husband seeking to disprove paternity under § 26-17-607(a). However, the record does not support a determination that the husband sought to disprove his own paternity of the child. As the trial court noted in its July 18, 2012, order, a request for a DNA test to determine paternity is not necessarily inconsistent with maintaining a claim asserting one’s status as the child’s legal father. Rather, such a test can be requested in the hopes that it confirms the existence of a *152 biological relationship between the man and the child. Another reason for requesting a paternity test would be to ensure an accurate medical history for the child. Also, and as the trial court noted, it appears to be relevant in this case because the results of the DNA paternity testing can be used as evidence on the issue of a wife’s adultery, a finding of which can affect issues such as property division and alimony in a divorce action. See Keating v. Keating, 122 So.3d 1259, 1267 (Ala.Civ.App.2013) (the relative fault of the parties in contributing to the breakdown of the marriage is a factor the trial court may consider in its division of property and alimony award).
In this case, the trial court conducted a hearing immediately after the results of the DNA paternity testing became known. In the July 16, 2012, order entered after that hearing, the trial court specifically found that, although the husband was not the biological father of the child, the husband was persisting in his status as the legal father of the child. D.F.H. makes no argument that, in the divorce action, the husband is not asserting his status as the child’s presumed father pursuant to § 26-17 — 204(a)(1). Rather, D.F.H. argues that the husband’s admission or acknowledgment that he is not the biological father of the child is sufficient to defeat his legal claim that he is the child’s presumed father.
However, there is no requirement that, in persisting in a claim as the legal or presumed father of a child, one must believe or have evidence demonstrating that he is the biological father of the child. In Ex parte C.A.P., supra, the mother ended her relationship with the biological father of the child and married a different man two months before the child’s birth. Our supreme court, citing the predecessor to § 26-17-607, held that the child’s biological father had no standing to seek to have his paternity established. “A man not presumed to be the father, but alleging himself to be the father, may institute an action to have himself declared the father only when the child has no presumed father.” Ex parte C.A.P., 683 So.2d at 1012. In that case, as in this case, the mother’s husband was the child’s presumed father, and, therefore, no other man could seek to have his paternity of the child determined.
In Baker v. Kennedy, supra, R.K. was born of the mother’s relationship with Baker, but the mother later married Kennedy. Kennedy and the mother later obtained an order of legitimation and identified Kennedy as the child’s father on the child’s birth certificate, and Kennedy acted as a father to the child. When Kennedy and the mother divorced, they entered into an agreement that addressed custody issues pertaining only to A.K., the child born of their marriage. Thereafter, Kennedy moved to set aside the agreement and sought visitation rights not only with A.K., but also with R.K. The trial court entered an order granting the motion to set aside the divorce judgment as to the custody issues. While the matter remained pending, the mother resumed her relationship with Baker and married him. The trial court denied Baker’s motion to intervene in the action between the mother and Kennedy, and Baker appealed.
This court held that, under the predecessor to § 26-17-204, Kennedy was the child’s presumed father by virtue of his marriage to the mother and his placing his name on the child’s birth certificate.[2] This court then concluded that
*153 “because Kennedy is a presumed father under former § 26-17-5(a)(3)b. [now § 26-17-204(a)(4) ], Baker would not have the right to intervene in the divorce action under the former act, provided Kennedy persists in his status as a presumed father. See former § 26-17-6(a) [now § 26-17-607(a) ] and Ex parte Presse, 554 So.2d 406, 418 (Ala.1989) (‘[S]o long as the presumed father persists in maintaining his paternal status, not even the subsequent marriage of the child’s mother to another man can create standing in the other man to challenge the presumed father’s parental relationship.’); see also Hooten v. Hooten, 754 So.2d 634, 635 (Ala.Civ.App.1999) (‘Our supreme court has held that no one, including the mother of the child, has standing to challenge a presumed father’s paternity as long as the presumed father persists in claiming paternity of the child.’).”
Baker v. Kennedy, 51 So.3d at 342. This court noted that the evidence indicated that Kennedy had persisted in his presumption of paternity, and, therefore, it affirmed the trial court’s denial of Baker’s motion to intervene. Baker v. Kennedy, supra.
In Cravens v. Cravens, 936 So.2d 538 (Ala.Civ.App.2005), the wife and the husband in that case married two months before the birth of the child at issue in that case, and, during a divorce action initiated three years later, the wife requested a paternity test to disprove the husband’s paternity. The trial court granted the wife’s request, and the DNA paternity test excluded the husband as the child’s biological father. In its divorce judgment, the trial court, among other things, awarded the parties joint legal and physical custody of the child. In doing so, the trial court determined that, because the husband was presumed to be the father of the child born during the marriage, the DNA-paternity-test result did not defeat that presumption. The wife appealed, and this court affirmed. In so holding, this court stated that the husband had persisted in his claim as the presumed father of the child even after the paternity test demonstrated that he was not the child’s biological father. In addition, this court also noted the policy considerations identified by our supreme court, specifically that “ ‘the obvious objectives of the Alabama Uniform Parentage Act ... are to provide for the psychological stability and general welfare of the child and to afford legitimacy to children whenever possible.’ ” Cravens v. Cravens, 936 So.2d at 541 (quoting Ex parte C.A.P., 683 So.2d at 1012).[3]
*154 The foregoing authorities demonstrate that, in order for a man to persist in maintaining his paternity or his claim as the presumed or legal father of a child, there is no requirement that the man believe he is, or that he actually be, the biological father of the child. Rather, when he is a presumed father of a child under § 26-17-204, a man may persist in maintaining his status as the father of the child even with the certain knowledge that he is not actually the child’s biological father. Therefore, contrary to the argument asserted by D.F.H., it is irrelevant that the husband has acknowledged that he is not the biological father of the child. Likewise, given the possible reasons a person might seek a determination of a child’s paternity, the facts of this case, and the trial court’s findings, we conclude that the fact that the husband sought a determination of his paternity did not operate to waive the presumption in favor of his status as the father of the child created by § 26-17-204.[4]
D.F.H. has failed to demonstrate that the husband has not continued to persist in his claim as the legal or presumed father of the child. Accordingly, D.F.H. has not demonstrated that the trial court erred in denying his motion to intervene.
APPEAL DISMISSED ' IN PART; JUDGMENT DENYING MOTION TO INTERVENE AFFIRMED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. D.F.H. also contends in his brief on appeal that, in acknowledging the results of the DNA paternity test, the husband has not held himself out publically to be the father of the child. A presumption arises that a man is the father of a child if, among other things, he holds himself out to the public as the child’s father. § 26-17-204(a)(5), Ala.Code 1975. That presumption is one of several alternative presumptions set forth in § 26-17-204(a). D.F.H. has cited no authority supporting the proposition that a man’s acknowledgment that he is not the biological father of a child of whom he is the presumed father equates to a finding that the man has not held himself out publicly to be the father of the child. Even assuming that such authority existed, any failure to publicly assert paternity does not affect the presumption in favor of the husband afforded by § 26 — 17—204(a)(1) because of his status as the man married to the child's mother at the time of the child’s birth.

. Former § 26-17-5(a), repealed and replaced by § 26-17-204(a)(4), provided, in pertinent part:
*153 "(a) A man is presumed to be the natural father of a child if any of the following apply:
[[Image here]]
"(3) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and
"a. He has acknowledged his paternity of the child in writing, the writing being filed with the appropriate court or the Office of Vital Statistics; or
"b. With his consent, he is named as the child’s father on the child's birth certificate.”

. We note that D.F.H. briefly contends that § 26-17-607(b) applies to the facts of this case and allows him to rebut the presumption of paternity in favor of the husband. That section provides:
"(b) A presumption of paternity established under this section may be rebutted in an appropriate action only by clear and convincing evidence. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man.”
*154 D.F.H. does not contend that he is a presumed father or that he was entitled to such a presumption under that section. Rather, he contends that the husband "gave rise to two or more conflicting presumptions” when he requested the DNA paternity test. D.F.H. fails to identify those purported conflicting presumptions or explain his argument further. Therefore, we conclude that D.F.H. has failed to properly develop and support his argument as required by Rule 28, Ala. R.App. P., and we decline to create or substantiate an argument on his behalf. See Board of Water & Sewer Comm’rs of City of Mobile v. Bill Harbert Constr. Co., 27 So.3d 1223, 1262-63 (Ala.2009); and Downs v. Lyles, 41 So.3d 86, 91-92 (Ala.Civ.App.2009).

. D.F.H. states in the conclusion of the argument section of his brief on appeal that he was entitled to a hearing on his challenge of whether the husband persists in his assertion of his status as the child's presumed or legal father. D.F.H. has failed to cite any authority in support of that argument, in contravention of Rule 28, Ala. R.App. P. We note, out of an abundance of caution, that the pleadings, motions, and orders in the record on appeal render a hearing on that issue unnecessary in this case; it is clear that the husband persists in the presumption afforded him by § 26-17-607(a)(1).