THOMAS, Judge.
B.C. (“the mother”) and J.C. (“the husband”) appeal from a judgment of the Blount Juvenile Court (“the juvenile court”) adjudicating J.S.U. (“the biological father”) as the legal father of G.S.C. (“the child”).
The record indicates the following relevant facts and procedural history. It is undisputed that the mother and the biological father had a relationship from July 2011 until December 2011. It is also undisputed that the mother became pregnant with the child sometime during the end of October or the beginning of November 2011 and that she and the biological father lived together for a short period in November 2011. The record further reveals that the mother began dating the husband in March 2012, that they were married on June 15, 2012, and that the child was born on June 27, 2012. The husband was present at the child’s birth, and his name is listed as the father on the child’s birth certificate.
On October 29, 2012, the biological father filed in the juvenile court a petition to establish paternity of the child and to set child support and visitation. In the petition, the biological father alleged that he, and not the husband, was the legal father of the child and requested that the juvenile court order DNA testing to determine paternity.[1] The mother filed a motion to *466 dismiss on February 4, 2013, in which she asserted that the biological father had failed to join the husband as an indispensable party. The mother filed a second motion to dismiss on February 6, 2013, asserting that the biological father lacked standing to file the petition to adjudicate paternity. The biological father filed a motion to join the husband as a party on February 7, 2013; the State Judicial Information System (“SJIS”) case-action-summary sheet indicates that that motion was granted on February 25, 2013! The biological father filed an amended complaint that named the mother and the husband as parties on March 27, 2013.
On April 8, 2013, the mother filed a motion to dismiss the biological father’s amended petition, again asserting that the biological father lacked standing; the biological father filed a response in which he asserted that he was entitled to an eviden-tiary hearing. The mother and the husband filed an answer to the biological father’s amended petition on May 23, 2013. After a hearing on May 28, 2013, the juvenile court entered a judgment on June 28, 2013, denying the mother’s motion to dismiss and adjudicating the biological father to be the legal father of the child. The judgment reserved the issues of visitation and child support for a later trial date.
The mother and the husband filed what they styled as a motion for a new trial on July 2, 2013, in which they also sought a stay of enforcement of the juvenile court’s judgment pending resolution of any appeal they might file; the biological father filed a response on that same day. The SJIS case-action-summary sheet indicates that the motion for a new trial was denied on July 10, 2013. The mother and the husband filed a notice of appeal to this court on July 17, 2013; that appeal was assigned case number 2120891. On July 24, 2013, the juvenile court entered an order staying enforcement of its judgment pending the outcome of the appeal. This court determined that the judgment of the juvenile court was not final and dismissed the appeal on September 5, 2013; the certificate of judgment was issued on September 26, 2013.
The mother and the husband filed what they styled as a second motion for a new trial on October 31, 2013; the biological father filed a response on November 3, 2013. A hearing was held on November 4, 2013, at which the juvenile court heard arguments of counsel. On March 3, 2014, the juvenile court entered' a final judgment that incorporated the paternity adjudication from its June 28, 2013, judgment, awarded the biological father standard visitation, and ordered the biological father to pay child support to the mother. The judgment also stated that all other requested relief that was not addressed was denied. The mother and the husband filed a notice to appeal of the final judgment on March 12, 2014.
The mother and the husband argue in their brief on appeal that, because there was not sufficient evidence demonstrating that the husband had failed to persist in his status as the child’s legal father, the biological father lacked standing to maintain the action and, thus, the juvenile court lacked authority to adjudicate the paternity of the child. A similar issue regarding standing in a paternity action was addressed by this court in Ex parte S.E., 125 So.3d 720 (Ala.Civ.App.2013).
“Section 26-17-602, Ala.Code 1975, a part of the Alabama Uniform Parentage Act (‘the AUPA’), § 26-17-101 et seq., Ala.Code 1975, provides that any interested party may bring an action to adjudicate parentage. However, § 26-17-602 is limited in application by §§ 26-17-607 and 26-17-609, Ala.Code 1975, which restrict who has standing to seek an adjudication of paternity. When *467 there is a presumed father, the AUPA permits the presumed father to bring an action to disprove his paternity at any time. § 26-17-607(a). However, if the presumed father wishes to persist in his presumption of paternity, no one may bring an action to disprove his paternity or to establish paternity in another man. Id. (‘If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.’). The Alabama Comment to § 26-17-607 specifically states that ‘[s]ubsection (a) follows Ex parte Presse, 554 So.2d 406 (Ala.l989)[,] and its progeny that favor maintaining the integrity of the family unit and the father-child relationship that was developed therein.’ ”
S.E., 125 So.3d at 721 (emphasis added).
Section 26-17-204(a)(l), Ala.Code 1975, provides that “[a] man is presumed to be the father of a child if ... he and the mother of the child are married to each other and the child is born during the marriage.” This presumption of paternity remains irrefutable, even if a presumed father acknowledges that he is not the biological father, so long as the presumed father persists in his claim of paternity. See D.F.H. v. J.D.G., 125 So.3d 146 (Ala. Civ.App.2013). In D.F.H., J.D.G. had initiated divorce proceedings against D.A.G. and also had requested that the trial court order a DNA test to determine if J.D.G. was the biological father of a child born during their marriage. D.F.H., 125 So.3d at 147-48. D.F.H. attempted to intervene in the divorce action as the child’s biological father; the trial court, citing § 26-17-607, Ala.Code 1975, denied the motion to intervene. Id. at 148. The DNA test confirmed that J.D.G. was not the biological father of the child; however, the trial court specifically found that J.D.G. had continued to “ ‘persist[ ] in his status as the legal father, and, therefore, under § 26-17-607, Ala.Code 1975, he remain[ed] the only legal father of th[e] child.’ ” Id. On appeal, this court stated that it was “irrelevant that [J.D.G.] ha[d] acknowledged that he [wa]s not the biological father of the child,” id. at 154, and, after a lengthy analysis of applicable statutes and caselaw, held that,
“in order for a man to persist in maintaining his paternity or his claim as the presumed or legal father of a child, there is no requirement that the man believe he is, or that he actually be, the biological father of the child. Rather, when he is a presumed father of a child under § 26-17-204, a man may persist in maintaining his status as the father of the child even with the certain knowledge that he is not actually the child’s biological father.”

Id. '

In D.F.H., this court relied heavily on our supreme court’s analysis in Ex parte C.A.P., 683 So.2d 1010 (Ala.1996), an opinion with comparable facts to the case at bar. In G.A.P., J.W.O. filed a declaratory-judgment action in which he alleged that he and C.A.P., the mother, had cohabited, that a child had been conceived during the time that they had cohabited, and that the mother had married W.H.P. two months before the child' was born. C.A.P., 683 So.2d at 1010-11. The trial court in that case granted C.A.P.’s motion to dismiss, which had asserted that J.W.O. lacked standing to initiate a paternity action. Id. at 1011. Our supreme court, interpreting the predecessor to § 26-17-607(a), held that “[a] man not presumed to be the father, but alleging himself to be the father, may institute an action to have himself declared the father only when the child has no presumed father.... That is not the case here.” Id. at 1012. Compare R.O.M. v. T.W.J., 768 So.2d 397 (Ala.Civ.App.2000) (holding that because the pre *468 sumed father had failed- to exercise his parental rights, including having signed a waiver of his parental rights to the child, the biological father was allowed to present evidence to rebut the presumption of paternity).
The biological father in this case argues that, because the husband had acknowledged to others — including his parents, the mother’s parents, and his employer — that he was not the biological father of the child, the husband had failed to persist in his presumed status as the child’s legal father. We disagree. This court and our supreme court have explained that a presumed father need not pretend to be a child’s biological father in order to persist in his presumption as the legal father. See D.F.C. and C.A.P., supra. At the trial in this case, the mother and the husband •presented evidence indicating that the husband had continued to persist in his claim of paternity. The husband testified that he had married the mother, in part, to provide a home and a father for the child, that he spent every night at home with the child, that he helped put the child to bed at night, and that he continued to persist in his status as the legal father of the child. The mother testified that the husband was present for the birth of the child, that he spends time with the child, that he provides for the child, and that he has always persisted in the presumption that he is the legal father of the child. Therefore, it matters not that the husband acknowledged to his parents, the mother’s parents, and his employer that he was not the biological father of the child, so long as he has continued to persist in his presumed status as the legal father of the child.
As we have stated, it is undisputed that the mother and the husband were married before the birth of the child. In his brief, the biological father, citing D.S.M. v. L.M., 854 So.2d 1140 (Ala.Civ.App.2002), argues that the husband’s failure to object to the DNA testing constitutes a failure to persist in his presumed status as the legal father. In D.S.M., L.M., the wife, informed D.M., the husband, while a divorce action was pending between them, that he was not the biological father of one of their children. D.S.M., 854 So.2d at 1141. This court’s opinion in D.S.M. states that that trial court ordered paternity tests, which confirmed that D.S.M., and not D.M., was the biological father of the child, and, “[a]t that point, [D.M.] did not persist in maintaining the parental presumption of [former] § 26-17-5(a)(l) [the predecessor to § 26-17-204], Ala.Code 1975.” Id. The trial court entered a judgment relieving D.M. of responsibility for that child and ordering D.S.M. to pay child support. Id. at 1141^2. D.S.M. appealed the trial court’s judgment, and the sole issue on appeal was whether the applicable statute of limitations barred any action to establish his paternity; the results of the paternity tests were not at issue on appeal. Id. at 1142. Further, other than the statement quoted above, nowhere in the opinion do we find a discussion of whether D.M. persisted in his presumed status as the legal father, nor is there a holding from this court stating that D.M.’s purported failure to object to the paternity test amounted to a failure to persist in the presumption that he was the legal father.[2] Moreover, in D.F.H., the legal father in that case actually requested the DNA test that proved he was not the biological father, yet this court still agreed with the trial court that he had not disclaimed paternity. We are, therefore, unpersuaded by of the biological father’s argument pertaining to the import of the holdings in D.S.M.
*469 Based upon the foregoing, we conclude that the biological father failed to present evidence demonstrating that the husband had failed to persist in his presumed status as the child’s legal father. Thus, the biological father lacked standing to maintain this action, and the juvenile court lacked authority to adjudicate the paternity of the child. Accordingly, we reverse the juvenile court’s judgment.
REVERSED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. Results from a DNA test that was conducted on January 7, 2013, are included in the record; the DNA test confirmed that J.S.U. is the biological father of the child.

. It is more likely that D.M. decided that he no longer wished to continue to persist in the presumption that he was the legal father of the child.